535 A.2d 1083

## QUAKER CITY ENGINE REBUILDERS, INC.

### v.

### Doreen L. TOSCANO and Jack W. McCullough and Tosmac, Inc., Appellants.

Superior Court of Pennsylvania.

Submitted Oct. 7, 1987.

Filed Dec. 28, 1987.

574

James F. Carney, Norristown, for appellants.

Howard L. Bobb, Philadelphia, for appellee.

Before ROWLEY, WIEAND and OLSZEWSKI, JJ.

OPINION OF THE COURT:

This is an appeal from a preliminary injunction entered by the Court of Common Pleas of Philadelphia County enjoin-

ing and restraining appellants from "any further business contacts or dealing with customers present or past of [appellee], and conducting business competitive with that of [appellee] ... until final hearing...." Of the three issues raised by appellants, the principal question is whether appellee has established a clear right to relief where appellant McCullough's contract with appellee, which contains a restrictive covenant, is for performance of services as an *independent contractor,* and not as an employee. For reasons which follow, we find it necessary to remand this case to the trial court.

Appellee sells and distributes rebuilt auto and truck engines. Appellant McCullough began to work for appellee as director of sales on May 20, 1985, pursuant to an oral agreement. At some point later, McCullough notified appellee of his intention to leave the company. McCullough did not stop performing sales for the company, but as a result of his dissatisfaction, an agreement was entered into on February 1, 1986 whereby appellant Tosmac, Inc. ("Tosmac") would act as a sales representative for appellee in the capacity of an independent contractor. As part of the agreement, McCullough became responsible for his own travel and entertainment expenses. Additionally, the agreement contained a restrictive covenant as follows:

15. If this agreement is terminated by either party "Salesman" agrees that it wll (sic) not engage, directly or indirectly, either for itself or as agent or employee of any other, in manufacturing, buying, selling or dealing in automotive products that could be construed as competitive with the products of company, in the territory hereinabove described, for a period of 2 years after the termination of the agency herein created, without the written consent of the company.

The agreement was signed on behalf of Tosmac by appellant Jack McCullough, President, and appellant Doreen Toscano, Secretary. Appellant McCullough testified that he understood the terms of paragraph 15, and that he signed the agreement willingly.

In November, 1986, Tosmac ceased performing sales work for appellee. In January, 1987, appellee filed this action in Equity in which it alleged that on or about January 2, 1987, appellants began mailing advertisements to potential customers to purchase rebuilt engines from them, in violation of paragraphs 12, 13 and 15 of the agreement. The last paragraph of the advertisement stated:

I need your help to be successful. For the business you had given me while I was with Quaker City, I wish to thank you very much.

Appellee sought a preliminary injunction and temporary restraining order. A hearing was held on February 2, 1987, at which time the trial court entered an order granting the preliminary injunction and enjoining appellants "from any further business contacts or dealing with customers present or past of [appellee]." Appellants appealed the order of the trial court and filed a request for supersedeas pending appeal. The request for supersedeas was denied, and a concise statement of matters complained of on appeal was filed on April 8, 1987.

The issues raised by appellants on appeal are: (1) Did Quaker City prove that a preliminary injunction was warranted, and that immediate and irreparable injury would result if an injunction did not issue? (2) Did Quaker City prove that monetary damages would not be adequate to redress any injury suffered? (3) Did Quaker City establish a clear right to relief in that (a) appellant Tosmac was an independent contractor and not an employee, (b) there was an ambiguous choice of law in the agreement, and (c) appellee had previously breached the underlying agreement?

As this court recently noted,

[a]ppellate review of a decree granting a preliminary injunction is limited to whether the action of the court has 'any apparently reasonable grounds.' *Hospital Association of Pennsylvania v. Commonwealth Department of Public Welfare*, 495 Pa. 225, 433 A.2d 450 (1981). The purpose of a preliminary injunction is to preserve the

status quo as it existed before the acts complained of, and thereby prevent irreparable injury or gross injustice. *Slott v. Plastic Fabricators, Inc.,* 402 Pa. 433, 167 A.2d 306 (1961).

*East Hills TV & Sporting v. Dibert,* 366 Pa.Super. 455, 531 A.2d 507 (1987). "In order to sustain a preliminary injunction, the plaintiff's right to relief must be clear, the need for relief must be immediate, *and* the injury must be irreparable if the injunction is not granted." *Township of South Fayette v. Commonwealth,* 477 Pa. 574, 580, 385 A.2d 344, 347 (1978).

■ We address the first two issues before focusing on the crux of appellants' argument, which is contained in issue three. As to the first issue, our Supreme Court has held:

It is not the initial breach of a covenant which necessarily establishes the existence of irreparable harm but rather the threat of the unbridled continuation of the violation and the resultant incalculable damage to the former employer's business that constitutes the justification for equitable intervention.

*Bryant Co. v. Sling Testing and Repair, Inc.,* 471 Pa. 1, 7, 369 A.2d 1164, 1167 (1977); *Robert Clifton Associates v. O'Connor,* 338 Pa.Super. 246, 487 A.2d 947 (1985). At the hearing the trial court heard testimony that appellant McCullough had access to a customer list containing 3,000 names during his tenure with appellee. A current employee of appellee testified that he called at least 200 of appellee's customers and learned that 95% had received appellants' advertisement. Thus, with the prospect of "unbridled continuation" of this advertising process, the court had reasonable grounds to find immediate and irreparable harm under the standard elucidated in *Bryant.*

Second, on the issue of monetary damages, we also look to *Bryant.* The Court noted:

[A restrictive] covenant seeks to prevent more than just the sales that might result by the prohibited contact but also the covenant is designed to prevent a disturbance in

the relationship that has been established between appellees and their accounts through prior dealings. It is the possible consequences of this unwarranted interference with customer relationships that is unascertainable and not capable of being fully compensated by money damages. [W]here a covenant of this type meets the test of reasonableness, it is prima facie enforceable in equity. *Id.* 471 Pa. at 8, 369. A.2d at 1167 (citations omitted). Due to the clear dictates as set forth by our Supreme Court, we have no hesitation in holding that appellee proved that immediate and irreparable injury would result if an injunction did not issue, and that monetary damages would not be adequate to redress the injury. It is the third issue, whether appellee established a right to relief, which requires more detailed consideration.

■ Appellants primarily argue that appellant McCullough was an independent contractor, and as such, cannot be subject to a restrictive covenant. Appellee contends that "[a] change from employee to independent exclusive sales agent clearly constitutes a change in the conditions of employment sufficient to enforce a restrictive covenant" under *Bryant.* After close scrutiny of applicable cases we find that appellee has established a right to relief.

The history of the development of covenants not to compete was summarized by our Supreme Court in *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A.2d 838 (1957). Justice Cohen, writing for the Court, noted that contracts in partial restraint of trade arose, and were upheld by the English courts, in response to a new commercial era of changed economic conditions. *Id.,* 390 Pa. at 627, 136 A.2d at 844. As a result, Pennsylvania courts "held that employment contracts containing general covenants by an employe (sic) not to compete after termination of his employment are prima facie enforcible (sic) if they are reasonably limited as to duration of time and geographic extent." *Id.,* 390 Pa. at 628, 136 A.2d at 844.

The standard by which the validity of a restrictive covenant is judged has been set forth by our Supreme Court:

The law in this Commonwealth for more than a century has been that in order to be enforceable a restrictive covenant must satisfy three requirements: (1) the covenant must relate to either a contract for the sale of goodwill or other subject property *or to a contract for employment;* (2) the covenant must be supported by adequate consideration; and (3) the application of the covenant must be reasonably limited in both time and territory. *Maintenance Specialties v. Gottus,* 455 Pa. 327, 331, 314 A.2d 279, 281 (1974) (Jones, C.J., concurring); *Jacobson & Co. v. International Environmental Corp.,* 427 Pa. 439, 235 A.2d 612 (1967); *Capital Bakers, Inc. v. Townsend,* 426 Pa. 188, 231 A.2d 292 (1967); *Barb–Lee Mobile Frame Co. v. Hoot,* 416 Pa. 222, 206 A.2d 59 (1965); *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A.2d 838 (1957). *See also* Restatement of Contracts § 515(e) (1932).

*Piercing Pagoda, Inc. v. Hoffner,* 465 Pa. 500, 506–7, 351 A.2d 207, 210 (1976) (emphasis added). We must first analyze the case before us within the parameters of the initial criterion listed above, i.e., whether the covenant relates to "a contract for employment" within the meaning of cases handed down by our Supreme Court.

The rule upholding covenants not to compete between employers and former employees has been applied in numerous Pennsylvania cases. In *Sidco Paper Co. v. Aaron,* 465 Pa. 586, 351 A.2d 250 (1976), defendant was employed as a salesman by plaintiff paper company under a written contract which contained a covenant not to compete within a certain geographical area for two years after termination of his employment. Defendant went to work for a competitor, immediately entered into direct competition with his former employer, and the employer brought suit to enforce the covenant. Our Supreme Court held:

> [Pennsylvania] courts will permit the equitable enforcement of post-employment restraints only where they are incident to an employment relation between the parties to the covenant, the restrictions are reasonably necessary for the protection of the employer, and the restrictions

are reasonably limited in duration and geographic extent. *Girard Investment Co. v. Bello,* 456 Pa. 220, 318 A.2d 718 (1974); *Bettinger v. Carl Berke Associates, Inc.,* 455 Pa. 100, 314 A.2d 296 (1974); *Jacobson & Co. v. International Environment Corp.,* 427 Pa. 439, 235 A.2d 612 (1967).

*Id.,* 465 Pa. at 591, 351 A.2d at 252. *Girard Investment,* cited above by the Supreme Court, involved an employee who left his employer to open a competing consumer discount business, in violation of a restrictive employment covenant. In *Bettinger,* a salaried salesman left his employer to start a competing temporary-help business, in violation of a restrictive employment covenant. In *Jacobson,* a salesman with a company which sold building products left his employer to form a competing business, in violation of a restrictive employment covenant.

Recently, a panel of our Court reiterated that "[e]quitable enforcement of restrictive covenants is permitted when they are incident to an employment relation between the agreement's parties, they are reasonably necessary for the protection of the employer, and they are reasonably limited in duration and geographic extent." *Blair Design and Construction Co. v. Kalimon,* 366 Pa.Super. 194, 530 A.2d 1357, 1359–60 (1987). *Blair Design* involved the former employee of a construction and remodeling business who started a rival business which dealt with customers of his former employer, in violation of the restrictive covenant. We affirmed the preliminary injunction, which barred the former employee from conducting business in violation of the covenant.

It is evident that on the record as certified to us, we must decide whether the rule allowing a restrictive covenant which has traditionally applied between employer and employee can be extended to a principal and his independent contractor, where the contractor originally was *employed* by the principal, but did not have a restrictive covenant as part of his contract. In reaching our decision we accept the recent cautionary note of the Sixth Circuit Court of Appeals to the effect that the law applicable to employer/employee

relationships should not automatically be applied to relationships between independent business entities such as a licensor or licensee, or an assignor or assignee, where a restrictive covenant is concerned. *In re Talmage*, 758 F.2d 162 (6th Cir., 1985). Nevertheless, our examination of two Pennsylvania Supreme Court cases which follow convinces us that the agreement with the independent contractor in this case is sufficiently analogous to that of an employment agreement that the same equitable principles should apply.

In the first of these cases, *Piercing Pagoda, Inc. v. Hoffner*, 465 Pa. 500, 351 A.2d 207 (1976), the enforceability of a covenant not to compete was addressed by the Pennsylvania Supreme Court within a franchise setting. A franchisor sought to enforce a covenant not to compete after the franchisees terminated their franchise agreement. In determining whether the protection of an enforceable covenant not to compete should be extended from the employer/employee arena to franchise relationships, the court first determined that the franchisor had a protectible interest in its name. The Court then noted that courts in other jurisdictions have analogized covenants in franchise agreements to those contained in employment agreements. The Court held:

> [Pennsylvania] courts will permit the equitable enforcement of a covenant not to compete included in a franchise agreement where the restrictions are reasonably necessary for the protection of the franchisor without imposing undue hardship on the franchisee and the restrictions are reasonably limited as to duration of time and geographical extent.

*Id.*, 465 Pa. at 511, 351 A.2d at 212. Thus, in *Piercing Pagoda,* the Court demonstrated its willingness to extend the validity of restrictive covenants beyond the pure employment setting, if the rationale behind the covenant can be analogized to that which exists in the employer/employee relationship.

The following year, in 1977, our Supreme Court again examined the validity of a restrictive covenant outside the traditional employee/employer relationship, in the case of

*Bryant Co. v. Sling Testing and Repair, Inc.*, 471 Pa. 1, 369 A.2d 1164 (1977). *Bryant* involved an employee of Bryant Co. who was hired pursuant to an oral contract in March 1963 to work for two companies involved in the specialized field of selling and servicing devices used in industrial material lifting. Three months later the employee entered into written employment contracts with both companies, under which he was appointed a sales representative. These contracts each contained a restrictive covenant by which the employee agreed not to compete for three years after his employment ceased. *Id.*, 471 Pa. at 5, 369 A.2d at 1166.

As in the case before us, the employee in *Bryant* wanted to go into business on his own. In January, 1973, new agreements were prepared which permitted the employee to form a company and to solicit new business within the defined sales territory. However, a restrictive covenant prohibited him from selling directly to established accounts of his employers. Moreover, he was to remain in appellees' employ until February 28, 1973, at which time one of the former employers was to become the *manufacturer's agent* for the newly formed company while the new entity was to become *sales agent* for the other former employer. The Court held that the post-employment restrictive covenant was valid and enforceable because it was created ancillary to the 1973 agreement, which was created at the former employee's request and resulted in a change of employment status to his benefit. *Id.*, 471 Pa. at 11, 369 A.2d at 1168–9. Because of our Supreme Court's willingness to extend the doctrine in *Piercing Pagoda,* and its recognition of a post-employment covenant in *Bryant,* we hold that the covenant in the case at bar is sufficiently related to "a contract for employment," *by reason of analogy,* to give appellee a protectible interest.

We find additional support for our view that a valid restrictive covenant can be imposed on an independent contractor, under the circumstances of this case, in § 516 of the first Restatement of Contracts, "Instances of Reasonable Restraints." This section has been cited repeatedly in

Pennsylvania as support for the general rule upholding restraints in employer/employee cases.[1] Section 516 states in pertinent part:

The following bargains do not impose unreasonable restraint of trade unless effecting, or forming part of a plan to effect, a monopoly:

.　　.　　.　　.　　.

(f) A bargain by an assistant, servant, *or agent* not to compete with his employer, *or principal*, during the term of the employment or agency, or thereafter, within such territory and during such time as may be reasonably necessary for the protection of the employer or principal, without imposing undue hardship on the employee or agent. (Emphasis added.)

This section clearly demonstrates that the first Restatement contemplates application of restrictive "employment" covenants to situations beyond the traditional employer/employee relationship. Therefore, § 516 when considered in conjunction with our Supreme Court's holdings in *Piercing Pagoda* and *Bryant*, indicates to us that the restrictive covenant should not be set aside in the case before us, merely because appellant Tosmac is an independent contractor rather than an employee.

The second factor which we must examine under *Piercing Pagoda* is whether the restrictive covenant was supported by adequate consideration. In *Maintenance Specialties v. Gottus*, 455 Pa. 327, 314 A.2d 279 (1974), our supreme court observed:

[A] restrictive covenant is enforceable if supported by new consideration, either in the form of an initial employ-

---

1. *See Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 628, 136 A.2d 838, 844 (1957); *Jacobson & Co. v. International Environment Corp.*, 427 Pa. 439, 452, 235 A.2d 612, 620 (1967); and *Piercing Pagoda, Inc. v. Hoffner*, 465 Pa. 500, 510, 351 A.2d 207, 213 (1976). *See also* Justice Pomeroy's concurring opinion *Sidco Paper Co. v. Aaron*, 465 Pa. 586, 603–04, 351 A.2d 250, 259 (1976); Justice Pomeroy's dissenting opinion in *Girard Investment Co. v. Bello*, 456 Pa. 220, 224–27, 318 A.2d 718, 720–22 (1974); and Justice Manderino's dissenting opinion in *Maintenance Specialties, Inc. v. Gottus*, 455 Pa. 327, 339, 314 A.2d 279, 285 (1974).

ment contract or a change in the conditions of employment.

*Bryant Co. v. Sling Testing and Repair, Inc.,* 471 Pa. 1, 10, 369 A.2d 1164, 1169 (1977), *quoting Maintenance Specialties v. Gottus, id.* 455 Pa. at 330, 314 A.2d at 281. In the case before us, appellants, at their own request, entered into a new relationship with appellee which was of benefit to them. Therefore, the change in conditions of employment supplied the consideration necessary to support the restrictive covenant.

The final factor to be considered under *Piercing Pagoda* is whether the application of the covenant is "reasonably limited in time and territory." The standard by which these criteria are judged is whether the covenant "imposes restrictions broader than necessary to protect the employer." *Sidco Paper Co. v. Aaron,* 465 Pa. 586, 595, 351 A.2d 250, 254 (1976). Appellants assert that the trial court's order barring them from "conducting business competitive with that of [appellee] within these United States of America until final hearing" is unreasonably broad in geographic scope. We agree.

Tosmac's exclusive sales territory under the agreement of February 1st consists of the United States and Canada. The trial court's order limited enforcement of the covenant to the United States. We hold that under the decision in *Trilog Associates, Inc. v. Famularo,* 455 Pa. 243, 314 A.2d 287 (1974), the geographic scope of the restrictive covenant in the case before us is "greater than is required for the protection of the person for whose benefit the restraint is imposed" and it imposes undue hardship on appellants. *Id.,* 455 Pa. at 254, 314 A.2d at 293–94. The Court held in *Trilog* that the restrictive covenants had "no limitation on territory and thus are broader than is necessary for the protection of [plaintiff]." *Id.,* 455 Pa. at 254, 314 A.2d at 294. Such a finding does not necessarily invalidate a restrictive covenant, however. In Pennsylvania, an otherwise valid restrictive covenant which is geographically overbroad is "divisible and enforceable [once it has been limited by the court] to reasonable geographical limits." *Albee Homes,*

*Inc. v. Caddie Homes, Inc.,* 417 Pa. 177, 186, 207 A.2d 768, 773 (1965); *Barb–Lee Mobile Frame Co. v. Hoot,* 416 Pa. 222, 206 A.2d 59 (1965); *see also Robert Clifton Associates v. O'Connor,* 338 Pa.Super. 246, 487 A.2d 947 (1985). The record is not sufficient for a determination to be made by us as to the reasonableness of the duration and geographic scope of the restrictive covenant. Therefore, we remand this case to the trial court to determine the extent of protection necessary to protect appellee, and we instruct the court to amend its order of February 2, 1987, to reflect its findings.[2]

The preliminary injunction is vacated. Case remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.

2. We do not address the issue raised by appellants regarding the alleged ambiguity which results from paragraph 19 of the February 1st agreement. Paragraph 19 states that the agreement shall be construed under New Jersey and Pennsylvania law. The record does not indicate that the covenant was "designed solely to prevent competition," or that the territory specified in paragraph 3 of the agreement "is greater than that to which the business extends." Therefore, appellants have not demonstrated that "an inherent ambiguity and conflict" exists in the application of Pennsylvania and New Jersey law to the restrictive covenant.

As to appellants' argument that appellee has breached the February 1st agreement by failing to pay commissions and back pay for 1986, that issue was not before the trial judge at the hearing regarding the preliminary injunction.