## Nairn v. Bartusiak

374

*Thomas S. Giotto* and *Joseph F. Quinn,* for plaintiffs.
*Kris A. Vanderman,* for defendant.

WOLFE, *S.J.,* October 24, 1995—

## ADJUDICATION

Plaintiffs have brought this action in equity with a petition for preliminary injunction against defendant, raising an issue of breach of contract by defendant and conversion by defendant.

Defendant has filed an answer to the complaint and an answer to the petition for preliminary injunction.

The deposition of the plaintiff John P. Nairn, D.M.D., was taken September 22, 1995, and the deposition of defendant Barry F. Bartusiak, D.M.D., was taken September 21, 1995.

Plaintiffs have filed their brief in support of the petition for preliminary injunction, and defendant has filed his brief in opposition to the grant of preliminary injunction. Plaintiffs have filed a reply brief in support

of plaintiffs' preliminary injunction, and defendant has filed a reply to plaintiffs' brief.[1]

## ISSUES

(1) Are plaintiffs entitled to an enjoining injunction against defendant per the terms of the parties' employment agreement under paragraph 9, thereof?

(2) Is the issue of defendant's alleged conversion of plaintiffs' property for disposition at this time?

## STATEMENT OF FACTS

Issue no. 2 can be summarily resolved in that the parties have stipulated the petition for injunction may not be resolved under the current pleadings.

Addressing the issue of the alleged breach of contract by defendant, the basic facts are not essentially in dispute. Plaintiffs are a professional dental firm practicing dentistry in the city of Washington, Pennsylvania. The two individual plaintiffs have an aggregate dental practice of 60 years.

The defendant is a doctor of dentistry who was previously practicing in Washington County prior to joining the plaintiff's practice under the terms of a written agreement executed by the parties on September 1, 1993.

The applicable terms of the parties' written contract executed on September 1, 1993, provided an initial period of time of employment of defendant, from September 1, 1993, to August 31, 1994, except if terminated under section 8 of the agreement. Subsequently, the parties entered into a first amendment to the employment

---

1. At argument we directed the brief schedule to be that the parties would file their respective briefs within 10 days after date of argument, and defendant at defendant's option to file a reply to plaintiffs' brief within 10 days.

agreement extending the terms thereof, in point of time, of employment of defendant to October 31, 1994, with all of the provisions of the employment agreement to remain in full force and effect.

Defendant's employment continued after the expiration period of the initial term, and the extension thereof, without benefit of a written contract. In May 1995, defendant was informed by plaintiffs[2] that his employment would be terminated August 31, 1995, by reason that plaintiffs were seeking another junior dentist to plaintiffs' practice; defendant was also informed that his compensation would be changed for the ensuing three months from May of 1995, to date of August 31, 1995, from a base salary to a percentage of revenue that defendant's work generated. Subsequently, defendant was informed by plaintiffs that his termination date would be moved back to July 31, 1995.

On July 21, 1995, defendant left the practice with plaintiffs without notice to plaintiffs, and set up his own dental practice.

The crucial terms of the parties' initial agreement, as extended for the two month period, are in paragraph 8(a) and paragraph 9.

Paragraph 8 addresses *termination of agreement,* providing the parties' agreement may be terminated as follows:

"(a) Dentist, defendant, or senior dentists, plaintiffs, may voluntarily elect to terminate this agreement at any time after the effective date, provided that the party electing to terminate must deliver to the other party, written notice of such intention to terminate, not less than 180 days prior to the date upon which such termination is desired."

---

2. Dr. John P. Nairn, D.M.D.

Paragraph 9 of the agreement addresses *non-compete agreement:*

"If dentist's, defendant, employment with senior dentists, plaintiffs, is terminated by dentist, *except with cause,* under section 8(c), or if dentist's employment with senior dentists is terminated by senior dentists, *with cause,* under section 8(b) during the term of this agreement, dentist shall not, for a period of two years, from the date of termination, (i) engage in the practice of dentistry either individually or in association with others, within a 20 mile radius of senior dentists' principle [sic] office in Washington, Pennsylvania; or (ii) provide dental service for any patient for whom dental services were provided by senior dentists, including dentist, during the term of this agreement. The foregoing restrictions shall not apply to the dental practice offices, presently occupied by dentists, located in Hickory, McMurray, and any other office in Peters Township, no closer than Waterdam Plaza. Should dentist breach the provision of this section 10, (sic) senior dentists shall be entitled to an injunction or other such relief as may be appropriate." (emphasis added)

After July 21, 1995, defendant immediately commenced the practice of dentistry at the Washington Mall, located less than two miles from office of plaintiffs; additionally, defendant advertised his new practice in the local paper indicating his former relationship with plaintiffs.

## PLAINTIFFS' ARGUMENT

Plaintiffs contend the non-compete clause is valid and enforceable against defendant, notwithstanding the parties' written contract, and the two months written extension, thereof, expired before defendant's termination of his employment with plaintiffs. Plaintiffs argue the two year restrictive covenant, not to compete, was

triggered by defendant on July 21, 1995 when defendant abruptly and without notice, left plaintiffs' employment.

Plaintiffs contend, notwithstanding the expiration of the written agreement, containing the non-compete restriction on defendant, and extension thereof, did not abrogate the restrictive covenant and the non-compete clause continued and was enforceable against defendant at any time thereafter, irrespective if under a written contract, or employee at will. In this regard, plaintiffs argue that the covenant need not be "related to" or "ancillary to" any written contract of employment; in short, plaintiffs contend the restrictive covenant against the defendant may stand alone without a written contract, once defendant entered into the written agreement with the knowledge and consent of the restriction against him.

## DEFENDANT'S POSITION

Defendant contends plaintiffs have not met the rigid criteria to receive equitable injunctive relief, under the monetary circumstances, as plaintiffs have not been irreparably injured, and if indeed any injury was sustained, plaintiffs have an adequate remedy at law for any monetary damages sustained.

Defendant contends the non-compete clause is inextricably structured in the one year written contract and the agreed two month extension thereof, and therefore, after August 31, 1994, when defendant became an employee at will, the non-compete clause is unenforceable against him. Stated otherwise, defendant contends the two year time period to non-compete operated from September 1, 1993 through August 31, 1994, and if defendant terminated his employment during that time frame, clearly he would be bound by the covenant. In short, defendant argues the non-compete restrictive covenant cannot stand alone against him, after August

31, 1994. Moreover, defendant contends there is lack of quid pro quo to bind him to the covenant.

Defendant candidly admits the courts have enforced restrictive covenants, notwithstanding the stated term of the initial contract, expired. *Smith v. Shallcross,* 165 Pa. Super. 472, 69 A.2d 156 (1949); *DeMuth v. Miller,* 438 Pa. Super. 437, 652 A.2d 891 (1995). It is thus defendant's argument, in the event this court holds the non-compete clause survived the stated initial employment term into defendant's capacity, as an employee at will, it then becomes an issue if the term is viable for a period of one year, one year and two months, or a continuing recycling of two months.

Defendant contends on the theory of implied contractual continuation, plaintiffs were obligated to comply with the terms of the written contract after its expiration, and at which time defendant was an employee at will, in that, plaintiffs may not enforce the restriction without complying with the other terms of the contract. In this respect, defendant argues, his salary was unilaterally reduced by plaintiffs, he was not provided the 180 day notice of termination, as initially required, and his benefits were altered.

Defendant concludes if the non-compete agreement survived as plaintiffs argue, by extension of the employment agreement, plaintiffs have failed to perform material obligations, under the employment at will.

## DISCUSSION ON THE QUESTIONS OF LAW AND COURT'S CONCLUSIONS, THEREON

We have reviewed the well drafted and case cited briefs of the parties' attorneys, and have studied the depositions of the parties.

It has long been established an agreement containing a covenant by an employee, not to compete against his employer, after termination of employment, is per

se, enforceable. *Morgan's Home Equipment Corporation v. Martucci,* 390 Pa. 618, 136 A.2d 834 (1957); *Quaker City Engine Rebuilders Inc. v. Toscano,* 369 Pa. Super. 573, 535 A.2d 1083 (1987). (Plaintiffs' brief.)

We need not discuss the legality of the time and territory limitations of the restrictive covenant, two years and 20 miles, for the reason the parties have agreed that the time and territory parameters are reasonable and sustainable in law. Moreover, we need not discuss the adequacy of the consideration in the initial agreement, or the two month extension, and clearly the contract between the parties is for employment of defendant.

It is not essential that the covenant not to compete be "related to" or "ancillary to" any written contract of employment. What is essential, is the employment relationship between the parties. *Records Center Inc. v. Comprehensive Management Inc.,* 363 Pa. Super. 79, 525 A.2d 433 (1987). (Plaintiffs' brief.)

An agreement contained in an employment contract, not to compete against the employer, is structured for the sole benefit and protection of the employer. Here, the individual plaintiffs have an aggregate dental practice, of 60 years, and the facts are undisputed; the individual plaintiffs have a patient data exceeding 3,700 patients, when defendant commenced his employment.

The initial contract is comprehensive, in its terms, particularly very specific, as to paragraph 4, addressing the term of the agreement, for a period of one year, except if terminated, under section 8. Section 8 addresses grounds for termination and is composed of sub-sections 8(a), 8(b), 8(c), and 8(d).

Paragraph 9 addresses the non-compete language.

There is no dispute defendant's employment outlived the terms of the written agreement initially for one

year, and a two month extension thereof, which incorporated all of the terms of the initial agreement, which would include the covenant, not to compete.

Paragraph 8(a) permits either party to voluntarily terminate the agreement at any time, without cause, by delivering to the non-terminating party, 180 days written prior notice to termination.

Paragraph 8(b) is plaintiffs' option to terminate the agreement if, with cause, at any time and therein sets forth, the grounds for termination.

Paragraph 8(c) gives defendant an option to terminate the agreement with cause at any time, and therein, sets the grounds for termination.

The respective depositions of the parties leave no doubt that initially plaintiffs desired to work defendant into a one-third partnership with plaintiffs, as witnessed by paragraph 11 of the agreement addressing, future partnership:

"The parties to this agreement each look forward to continued relationship *after* termination of the written agreement. At the end of one year, senior dentists, plaintiffs, if they believe it to be in the best interest of associates to continue the services of dentist, defendant, may offer dentist an equitable position in associates. In that event, the parties shall negotiate a neutrally acceptable agreement for the transfer of the equity offer." (emphasis added)

From the foregoing stated desire and intent of the parties, we easily conclude the parties expected their relationship of employer-employee to continue after termination of the written agreement. For these reasons, we find the covenant, not to compete, is extended beyond the written contract, and the two months extension thereof. *Smith v. Shallcross, supra; Burge v. Western Pennsylvania Higher Education Council,* 391 Pa. Super.

108, 570 A.2d 536 (1990) and *DeMuth v. Miller, supra.* (Defendant's brief.) Moreover, this is evident from the parties' oral depositions.

Addressing the focal dispositive language of the employment agreement in paragraph 9, the emphasis is on the termination of defendant's employment. The depositions of the parties are not in disagreement, that the defendant's employment was terminated by plaintiffs, without cause, under paragraph 8(b) of the agreement. The deposition of Dr. Nairn, is defendant's work product decreased, notwithstanding, defendant complied with his 32 hour week schedule in the office. The testimony shows defendant's production slowed down, however, plaintiffs were unable to state the cause of defendant's production, other than a lack of work.

"Q. Was that due to a schedule problem? Was is [sic] due to a patient problem? What was your analysis to why he wasn't working with patients?

"A. I have no idea."

At best, plaintiffs were frustrated that the billing hours of defendant were decreasing. Nonetheless, plaintiffs point to no evidence that would be a termination for cause under the agreement.

The defendant's testimony is unequivocal that he was directed by plaintiffs to leave the practice. (T-26, 27.)

"Q. Did you believe that you were bound to observe the terms of the non-compete agreement, the employment, in February of 1995?

"A. I was uncertain.

"Q. As of February of 1995, did you intend to leave the practice?

"A. No, sir.

"Q. When did you make a decision to leave the practice?

"A. When I was kicked out of the practice.

"Q. When was that?

"A. That was when Dr. Nairn informed me on May 26 that I would be—my compensation would be changed, and also, that I would be out of the practice either September 1, or if mutually beneficial, October 1. Then on Friday, June 30, he informed me that I had to be out of the practice completely—kicked out of the practice—July 31.

"Q. So I understand it, you did not intend to leave the practice until May 26 of 1995?

"A. We had had ongoing discussions up until that juncture.

"Q. Were you considering leaving the practice before that time?

"A. Absolutely not.

"Q. Pardon?

"A. No, sir.

"Q. You weren't considering it?

"A. No.

"Q. When did you begin to make searches for employment, for alternative employment?

"A. Since I was informed on May 26 that my services weren't going to be required, I began in early June. I went to North Carolina to see if the pastures were 'greener' there."

Paragraph 8 of the agreement providing that either party may voluntarily elect to terminate the agreement at any time after the effective date, is restricted and limited by paragraph 9, which invokes the non-competitive covenant by defendant. Clearly in the event defendant terminated his employment, he is bound by the covenant, unless he did so with cause, under para-

graph 8(c). However, if defendant's employment is terminated by plaintiffs, the defendant is not bound by the covenant, unless his employment was terminated with cause, under paragraph 8(b).

The testimony is conclusive; plaintiffs were, at best, "frustrated" with defendant's work performance and the inability to reach an agreement to form a partnership with defendant.

Keeping in mind, plaintiffs have commenced their action in equity, for injunctive relief, to invoke the restrictive covenant against defendant; the evidence is without weight and support of law to enforce the covenant, under the facts of this case. There is no evidence when the parties entered into the agreement plaintiffs could unilaterally discharge the defendant without cause, but yet, compel the defendant to comply with the restrictive covenant.

To permit an employer to bilaterally terminate an employment agreement of this nature and grant the employer the benefit of the restrictive covenant, leads to an illogical and irrational conclusion that equity will not enforce. It is obvious, taken to its extremes, plaintiffs could create a monopoly, by contracting with employees, with the restrictive covenant, subsequently discharging them without cause and restrict territorial and years of professional practice.

## CONCLUSIONS OF LAW

We conclude the plaintiffs have not shown, by fair weight of the credible evidence and the law thereon, they are entitled to an injunction against defendant, and we enter the following decree nisi:

## DECREE NISI

And now, October 24, plaintiffs' petition for preliminary injunction is denied.