J-A07036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| FITNESS ESSENTIALS, L.L.C. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID NILL | |
| Appellant | No. 1345 WDA 2014 |

Appeal from the Order Entered July 17, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): AR 14-002198

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUNDY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 02, 2015**

David Nill appeals from the order, entered in the Court of Common Pleas of Allegheny County, granting a preliminary injunction to Fitness Essentials, L.L.C. ("Fitness").  After careful review, we affirm.

Fitness is in the physical fitness training business.  Nill is a fitness trainer who worked as an independent contractor for Fitness at its facility at the Pittsburgh Athletic Club ("PAA").[1]  Nill began working for Fitness in 1998

_____

[1] The PAA has, and had, almost all of the paraphernalia and equipment associated with fitness training.  Fitness, at best, had some elastic bands, medicine balls and the like on site.  Fitness has a lease with the PAA under which it used the equipment in the facility and sold its services to members of the PAA who wanted to become or remain fit.  Under the lease, Fitness paid the PAA $1,500 to $1,650 per month.

and continued to do so until early 2014.[2]  Nill signed independent contractor agreements with Fitness in 1998, 2000, 2002, and 2004, all of which contained restrictive covenants and non-compete language.

The non-compete clause in the 2004 Agreement reads as follows:

> 5. <u>Non-Competition</u>.  Fitness Essentials acknowledges and agrees that Trainer may provide personal training or other fitness related services on its own behalf or to other persons or organizations and does not object to Trainer's affiliations with other persons or organizations.  However, in order to adequately protect the interests of Fitness Essentials, it is necessary for Trainer to undertake limited obligations of non-competition.  Therefore, during the terms of this Agreement and for a period of two years immediately following the termination of this agreement for any reason, Trainer <u>will not, without Fitness Essentials' written consent</u>, directly or indirectly engage or employ any person who is engaged by Fitness Essentials as a personal trainer during the times this Agreement is in effect or in any manner <u>seek to induce any person to leave his or her engagement with Fitness Essentials, or any client to stop engaging the services of Fitness Essentials, or solicit any corporate client or customer of Fitness Essentials to engage Trainer or a fitness business affiliated with Trainer in place of Fitness Essentials, or otherwise interfere with ay contractual relationship of Fitness Essentials.</u>

Independent Contractor Agreement for Personal Training Services, 2/12/04, at 1-2 (emphasis added).

In 2014, Fitness presented Nill with an independent contractor agreement that included a more restrictive non-compete clause.  Nill declined to sign the new agreement and was subsequently terminated from

---

[2] When Nill started, he made about $15 per session.  By 2014, Nill's rate was $45 per session.

Fitness. Despite the non-compete clause of the 2004 Agreement, Nill continued to train 21 of his former Fitness clients at the PAA.

Thereafter, both parties filed complaints in the Magisterial District Court, which were appealed to the Court of Common Pleas of Allegheny County. The cases were consolidated and assigned to arbitration dockets.

On May 13, 2014, Fitness filed a motion for preliminary injunction, seeking to enforce the non-compete clause of the 2004 Agreement. The court heard argument on Fitness' motion on June 17 and June 23, 2014. On July 17, 2014, the Honorable Timothy O'Reilly issued an order and memorandum, granting the preliminary injunction. On August 12, 2014, Nill filed an emergency motion for reconsideration, which the court denied following oral argument.

Nill then filed this interlocutory appeal as of right[3] on August 18, 2014. On September 3, 2014, he applied to the trial court for a stay, either whole or in part, of the preliminary injunction order, pending disposition of this appeal pursuant to Pa.R.A.P. 1732(a). This Court denied the stay by per curiam order on September 30, 2014.

_____

[3] **See** Pa.R.A.P. 311(a)(4)(ii), which states: An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from an order that grants an injunction unless the order was entered after a trial but before entry of the final order. Such order is immediately appealable, however, if the order enjoins conduct previously permitted or mandated or permits or mandates conduct not previously mandated or permitted, and is effective before entry of the final order.

On appeal, Nill presents the following issues for our review:

1. Did the trial court abuse its discretion and/or commit error of law by granting a preliminary injunction based on the enforcement of a non-competition covenant in an independent contractor agreement?

2. Did the trial court abuse its discretion and/or commit error of law by determining that the non-competition covenant was part of the "initial entry into a new contract" even though the 2004 agreement was the third provisional agreement between the parties?

3. Was the non-competition covenant in the 2004 agreement unenforceable due to the insufficiency or lack of consideration?[4]

4. Did the trial court abuse its discretion and/or commit error of law by issuing a preliminary injunction when Fitness did not establish all of the criteria and, therefore, has unclean hands?

Appellant's Brief, at 4.

Appellate review of a trial court order granting or denying preliminary injunctive relief is highly deferential. *Warehime v. Warehime*, 860 A.2d 41, 46 (Pa. 2004). As such, an appellate court "will not inquire into the merits of the controversy, but instead will examine the record only to determine if there were any apparently reasonable grounds for the action of the court below." *Lutz Appellate Printers, Inc. v. Department of Property and Supplies*, 370 A.2d 1210, 1212-13 (Pa. 1977). Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will an appellate court

_____

[4] For ease of disposition, we will address issues two and three together.

interfere with the decision of the trial court. ***Blair Design & Constr. Co. v. Kalimon***, 530 A.2d 1357, 1359 (Pa. Super. 1987).

> [I]n order to be enforceable a restrictive covenant must satisfy three requirements: (1) the covenant must relate to either a contract for the sale of goodwill or other subject property or to a contract for employment; (2) the covenant must be supported by adequate consideration; and (3) the application of the covenant must be reasonably limited in both time and territory.

***Piercing Pagoda, Inc. v. Hoffner***, 351 A.2d 207, 210 (Pa. 1976).

In his first issue, Nill argues that a non-compete clause cannot be enforced with respect to an independent contractor relationship. Fitness argues to the contrary and relies on ***Quaker City Engine Rebuilders, Inc. v. Toscano***, 535 A.2d 1083 (Pa. Super. 1987), in support of its argument.

We begin by noting that Nill voluntarily and repeatedly entered into agreements with Fitness that explicitly classified him as an independent contractor. Nill was aware of the restrictive language included in the agreements from the beginning, and knew that in the event of termination, a non-compete covenant would be triggered.

In ***Quaker City***, this Court held that a restrictive covenant can apply to situations beyond the traditional employer-employee relationship. ***Id.*** at 1088. There, appellee was a company that sold and distributed auto and truck engines. Appellant entered into an agreement with appellee to become a sales representative in the capacity of an independent contractor. The independent contractor agreement in ***Quaker City*** also contained a restrictive covenant not to engage in the manufacturing, buying, selling, or

dealing in automotive products for a competitor for a period of two (2) years after termination or expiration of the independent contractor agreement. *Id.* at 1084-85. Appellant ceased performing sales work for appellee, and soon thereafter commenced advertising to potential customers to purchase and rebuild engines. *Id.* As in the case *sub judice*, appellant in *Quaker City* ceased working as an independent contractor for appellee and attempted to go into the same business on his own.

Citing *Piercing Pagoda*,[5] *Bryant Co. v. Sling Testing and Repair, Inc.*, 369 A.2d 1164 (Pa. 1977),[6] and § 516 of the Restatement (1st) of Contracts,[7] we concluded that the independent contractor relationship in

_____

[5] In *Piercing Pagoda*, the enforceability of a covenant not to compete was addressed within a franchise setting. There, our Supreme Court held that an employment relationship is established when a "franchise" agreement exists. *Piercing Pagoda*, 351 A.2d at 211. Particularly, where a franchisee received an opening line of inventory, basic training in fundamentals of the business, directions and guidance for market development, use of a corporate name carrying a degree of identity in the area of business, and an exclusive right to sell the product in a specified area, a franchise is considered a legitimate business interest and is therefore protectable. Thus, a covenant not to compete provision within a franchise agreement would create an employment relationship, satisfying the first requirement of a valid and enforceable covenant not to compete. *Id.*

[6] In *Bryant Co.*, our Supreme Court held that a restrictive covenant was valid and enforceable outside the purview of a traditional employment setting. *See Bryant Co.*, 369 A.2d at 1168-69 (holding that post-employment restrictive covenant was valid and enforceable).

[7] Section 516 states in pertinent part:

*(Footnote Continued Next Page)*

*Quaker City* was "sufficiently analogous to that of an employment relationship that the same equitable principles should apply." *Id.* at 1087. Accordingly, we will extend the validity of restrictive covenants beyond the pure employment setting "if the rationale behind the covenant can be analogized to that which exists in the employer/employee relationship." *Id.* at 1088.

Here, the impetus for the restrictive covenant was to prevent independent contractors from exploiting Fitness' existing infrastructure of clients and facilities for their own pecuniary benefit. The restrictive covenant also served to prevent independent contractors from conducting their own

*(Footnote Continued)* _____

> The following bargains do not impose unreasonable restraint of trade unless effecting, or forming part of a plan to effect, a monopoly:
>
> > (f) A bargain by an assistant, servant, *or agent* not to compete with his employer, *or principal*, during the term of the employment or agency, or thereafter, within such territory and during such time as may be reasonably necessary for the protection of the employer or principal, without imposing undue hardship on the employee or agent.
>
> This section clearly demonstrates that the first Restatement contemplates application of restrictive "employment" covenants to situations beyond the traditional employer/employee relationship. Therefore, § 516 when considered in conjunction with our Supreme Court's holdings in *Piercing Pagoda* and *Bryant*, indicates to us that the restrictive covenant should not be set aside in the case before us, merely because appellant is an independent contractor rather than an employee.

*Quaker City*, 535 A.2d at 1088-89 (emphasis in original).

business in direct competition with Fitness. In other words, the rationale for the restrictive covenant was to protect Fitness, its business model and practices, and its viability as a company. This is the same rationale present in any traditional employer/employee relationship. Thus, applying the same analysis in *Quaker City*, the non-compete clause of the 2004 Agreement is valid and enforceable against Nill because it is sufficiently related to a "contract for employment" to create a legitimate, protectable business interest. *See id.* at 1083.

In his second issue, Nill argues that the trial court committed an error of law when it determined that the 2004 Agreement constituted "initial entry into a new contract" and, therefore, the job itself was adequate consideration to enforce the non-compete clause. Although we disagree with the trial court's reasoning, we still find that Nill received actual valuable consideration sufficient to enforce the non-compete clause contained in the 2004 Agreement.

In *Socko v. Mid-Atlantic Systems of CPA, Inc.*, 99 A.3d 928, 931-32 (Pa. Super. 2014), *appeal granted*, 105 A.3d 659, 2014 WL 6991669 (Pa. 2014), this court determined:

> For a restrictive covenant to be enforceable, the employee must receive actual valuable consideration in exchange for signing an employment agreement containing one. When the restrictive covenant is contained in the initial contract of employment, the consideration is the job itself. But when the restrictive covenant is added to an existing employment relationship, however, to restrict himself the employee must receive a corresponding benefit or a change in job status.

- 8 -

***Socko***, 99 A.3d at 935.

Presently, the trial court concluded,

> In ***Socko*** we are told that a restrictive covenant entered at the <u>initial</u> taking of employment is enforceable and the job is the consideration. Here as an independent contractor the 2004 contract was an initial entry in a <u>new</u> contract because that contract continued until a new one was entered. Thus, the covenant applies.

Trial Court Opinion, 7/17/14, at 6 (emphasis in original).

This reasoning circumvents real the issue. The 2004 Agreement was, in actuality, a continuation of the parties' relationship that began in 1998 as demonstrated by the successive nature of the agreements, which all included a non-compete clause. With this understanding, we proceed with our analysis.

It is undisputed that under the 2004 Agreement, Nill received a raise (in excess of the rate he negotiated for) and his responsibilities with Fitness expanded to include nutrition counseling. Pursuant to that expansion, Nill received new business cards and Fitness updated his biography on the company's website to reflect his new role as a nutrition counselor. The raise and change in job status constituted actual valuable consideration. ***Id.***, at 933 quoting ***Maintenance Specialties, Inc. v. Gottus***, 314 A.2d 279, 282-83 (Pa. 1974).

In his fourth issue, Nill asserts that Fitness has failed to satisfy the elements necessary for granting a preliminary injunction. We have long held that:

In ruling on a preliminary injunction request, a trial court has apparently reasonable grounds for its denial of relief where it properly finds that any one of the following essential prerequisites for a preliminary injunction is not satisfied. First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Second, the party must show that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings. Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits. Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity. Sixth and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

***Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mt., Inc.***, 828 A.2d

995, 1001 (Pa. Super. 2003) (quotations and citations omitted).

First, Nill argues that a preliminary injunction was not necessary

because the 2004 agreement contained a liquidated damages provision that

could adequately compensate Fitness.[8]  We have previously considered the

grant of preliminary injunctions where liquidated damages are available, and

_____

[8] Nill raises this argument despite the plain language of the 2004 agreement, which reads, "Trainer further agrees that enforcement of this paragraph [the non-compete] may also be by injunction, in addition to all other remedies that may be available at law or equity."  Exhibit "A" to Plaintiff's Brief in Support of Defendant's Response in Opposition to Plaintiff's Motion for a Preliminary Injunction, at 2.

ultimately, our decisions have turned on whether the liquidated damages are sufficient to compensate the petitioner. In ***The York Group, Inc. v. Yorktowne Caskets, Inc.***, 924 A.2d 1234 (Pa. Super. 2007), this Court distinguished precedent supporting Nill's argument on the grounds that where liquidated damages are available, a preliminary injunction may nonetheless be granted where the harm incurred involves the loss of market share or business opportunity, and thus cannot be clearly calculated. ***Id.*** at 1243-44. The nature of those losses, by definition, renders them irreparable. ***See Sheridan Broad. Networks, Inc. v. NBN Broad., Inc.***, 693 A.2d 989, 995 (Pa. Super. 1997) ("In the commercial context, the impending loss of business opportunities or market advantages may aptly be characterized as irreparable injury for this purpose.").

While we acknowledge that Nill can identify the clients he took from Fitness, and the amount they paid for his services, there remains the much more nebulous calculation of how his venture has harmed Fitness' market advantages and business opportunities. In an industry as dependent on referrals and reputation as personal training, it is difficult to estimate these figures accurately. As such, we find a reasonable basis to support a finding for Fitness on the first element.

Next, Nill challenges the second element, whether greater injury will occur from refusing the injunction than granting it, because the injunction is overly broad in scope. Fitness has suffered harm by losing some of its customers, and potentially some of its goodwill and market advantage in the

community. By contrast, though Nill has lost some of his clients, he is not precluded from earning a living as a personal trainer. He remains free to train clients, so long as he does so in a manner consistent with the restrictive covenant that he willingly signed. As such, Nill has failed to disprove the lower court's reasoning in finding the second element satisfied.

Nill broadly challenges the third element, arguing that injunctive relief does not restore the status quo. The purpose of the restrictive covenant was to prevent Fitness from suffering a loss of clients and/or business in the event that Nill no longer worked for Fitness. Despite that language, Nill began training 21 of Fitness' clients. The injunction, therefore, serves to restore Nill and Fitness to their status as it existed immediately prior to the alleged wrongful conduct.

Finally, Nill challenges the injunction on the grounds that it is not reasonably suited to abate the allegedly offending activity. As we have already noted, the injunction serves only to enforce the restrictive covenants that Nill willingly entered. This Court has previously held, "[e]quitable enforcement of restrictive covenants is permitted when they are incident to an employment relation between the agreement's parties, they are reasonably necessary for the protection of the employer, and they are reasonably limited in duration and geographic extent." ***Blair Design and Const. Co., Inc. v. Kalimon***, 530 A.2d 1357, 1359-60 (Pa. Super. 1987). We conclude that the injunction fits comfortably within those articulated boundaries because the non-compete clause was incident to the employment

relationship, necessary to protect Fitness from cannibalization, limited in duration to two years, and only extended to Fitness' existing clients.

While Nill avers that the covenant restricts him from practicing his trade, he fails to recognize the limited scope of the injunction. Nill has significant experience as a personal trainer. He is not barred from using those skills and experiences to solicit new clients. He is free to train anyone at any facility, except for Fitness clients at the PAA and Pittsburgh Golf Club, where Fitness has obtained lease rights and customarily trained its clients.

Lastly, Nill challenges the imposition of the injunction, by asserting the equitable defense of unclean hands. We have long recognized that, "[t]he doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy in issue." *Terraciano v. Department of Transportation*, 753 A.2d 233, 237-38 (Pa. 2000). Instantly, Nill claims that Fitness acted in bad faith, both in employing him as an independent contractor and in imposing indemnity and hold harmless provisions in his contract. Regardless of the merit of Nill's claim that this was a sham independent contractor arrangement, we find his argument underdeveloped[9] and unpersuasive. Nill has failed to meaningfully discuss

_____

[9] The only case law supporting Nill's argument, other than a terse footnote, is *Philadelphia Housing Corp. v. Willoughby*, 97 A.3d 866 (Pa. Cmwlth. 2014). That case involves an unclean hands defense asserted against a fraudulent action to quiet title, and does not discuss the use of "captive independent contractor" arrangements to escape tax liability.

why Fitness' arrangement constituted bad faith. Further, to the extent Nill makes arguments regarding bad faith present in the 2014 contract, we will not examine those claims as that agreement was never signed, and is thus, not at issue in the matter *sub judice*. As such, there are insufficient grounds to apply the doctrine of unclean hands.

Order affirmed.

BENDER, PJE.,  Joins the majority.

MUNDY, J., Concurs in result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/2/2015