Drug Fair-Community Drug Co., Inc., Appellant, v. Drug Fair, Inc.

Argued May 25, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Edward Greer*, with him *Mesirov, Gelman, Jaffe & Levin*, for appellant.

*Ralph S. Snyder*, with him *C. Gary Wynkoop*, and *Schnader, Harrison, Segal & Lewis*, for appellee.

OPINION BY MR. JUSTICE NIX, September 19, 1973:

The primary issue presented in this appeal is whether appellant, a foreign corporation with its principal place of business in Baltimore, Maryland, should be permitted to restrain appellee, Drug Fair, Inc. a Pennsylvania corporation with its principal place of business in Philadelphia, from doing business under its corpo-

rate name on the ground that appellee's use of the name "Drug Fair" infringes appellant's rights in said name.

Appellant filed a complaint in equity to enjoin appellee from using the name "Drug Fair". A hearing was held on the complaint and the chancellor issued a decree nisi, denying appellant relief. Exceptions to the adjudication were argued before the court en banc which denied the same in an adjudication filed November 25, 1969. From the final decree thus entered, this appeal followed.

The facts as found by the chancellor and approved by the court en banc insofar as they are relevant to this appeal are as follows: Appellant operates a chain of ninety-four retail drug stores, selling a variety of goods in addition to pharmaceuticals throughout Virginia, Maryland, West Virginia and the District of Columbia. The name "Drug Fair" has been used by appellant in its business operations since the year 1951. Moreover, appellant has used the "Drug Fair" in advertising for approximately fifteen years in newspapers, trade magazines, radio, television and spends in excess of one million dollars ($1,000,000.00) per year on advertising. Further, the lower court found that appellant did not own or operate any stores in Pennsylvania[1] and in fact, appellant's only advertising in the Commonwealth was in the classified section of various news media for employment of pharmacists. It engaged in no consumer advertising of its products in Pennsylvania.

Appellee was incorporated in Pennsylvania, July 15, 1964, and registered under the Fictitious Corporate Name Act,[2] on or about July 29, 1964. It operates two retail drug stores in Philadelphia as Drug Fair, Inc. and sells a variety of goods in addition to pharmaceuti-

---

[1] Since instituting suit, appellant has opened five stores in the south central portion of the state.

[2] Act of July 11, 1957, P. L. 783, §1 et seq., 15 P.S. §51 et seq.

cals. The lower court found that at the time of incorporation, appellee's principals were aware of other businesses trading under the name "Drug Fair" but were not aware of the nature or extent of that use and did not specifically know of appellant's chain. The court further found that appellant, through its attorney, first notified appellees of its interest in the name "Drug Fair" approximately six weeks after appellee was incorporated but delayed bringing suit until five months after the opening of appellee's first store, a delay which was prejudicial to the appellee.

The court below concluded that appellee's use of the name "Drug Fair" was not intended to deceive or trade upon appellant's reputation, that the name "Drug Fair" had not acquired any secondary meaning in Pennsylvania, and that its use by appellee did not constitute an unfair method of competition. Accordingly, it was ordered that appellee should not be enjoined from the use of the name "Drug Fair" in the operation of its business. We agree and therefore affirm.

Whether or not appellant is entitled to injunctive relief for alleged trade name infringement is dependent upon whether its trade name, "Drug Fair" had acquired a secondary meaning in Pennsylvania.

"The law in this class of cases is well established; its application to different facts and circumstances is sometimes difficult. *Descriptive, geographical and generic words, as well as words of common or general usage* belong to the public and *are not capable of exclusive appropriation by* anyone. This general principle is subject to the limitation or exception that if a trade name or trade-mark or other word or words have acquired, *in the trade and in the minds of the purchasing public,* a special or so-called secondary meaning, i.e., have come to mean that the article is the product of a certain manufacturer or of a particular individual or corporation, such trade name or trade-mark or word

or words will be protected against infringement: [citing cases]." *Kool Vent Metal Awning Corp. v. Price,* 368 Pa. 528, 532-33, 84 A. 2d 296, 298 (1951) (emphasis in original). *See Miscellaneous, Inc. v. Klein's Fashions, Inc.,* 452 Pa. 62, 305 A. 2d 22 (1973); *Zimmerman v. Holiday Inns of America, Inc.,* 438 Pa. 528, 266 A. 2d 87 (1970); *Zimmerman v. B. & C. Motel Corp.,* 401 Pa. 278, 163 A. 2d 884 (1960); *Quaker State Oil Refining Co. v. Steinberg,* 325 Pa. 273, 189 A. 473 (1937).

A thorough examination of the instant record convinces us that the name "Drug Fair" had not acquired a secondary meaning in the minds of the purchasing public of Pennsylvania prior to its adoption by appellee. The uncontradicted evidence adduced at trial shows that at the time of appellee's incorporation appellant made no sales in Pennsylvania, operated no stores in Pennsylvania and did no retail advertising in Pennsylvania. Clearly, Pennsylvania consumers had no reason to associate the name "Drug Fair" with appellant's chain of retail stores.

We agree with appellant that under appropriate circumstances a national chain can enjoin a local merchant's use of a trade name even though the national chain did not engage in business in the local area until after the local operator began business. We agree with the reasoning of the 4th Circuit in the case of *Food Fair Stores, Inc. v. Lakeland Grocery Corp.,* 301 F. 2d 156 (4th Cir. 1962), *cert. denied,* 371 U.S. 817 (1962), that even though a local merchant had used the name "Food Fair" in the local area before plaintiff corporation entered the local area, the local merchant's use could be enjoined upon application by plaintiff corporation. Significantly, however, the court found that the name "Food Fair" had acquired a secondary meaning in the minds of the purchasing public in the local area prior to the local merchant's use of the name. Here,

there is no evidence to establish that the "Drug Fair" name had a secondary meaning in Pennsylvania. Merely because the name "Drug Fair" is associated with appellant's stores in other areas of the country, the use of the name will not be enjoined in Pennsylvania where a secondary meaning has not been proven.

We are mindful that courts have placed less emphasis on the requirement of secondary meaning and have granted protection against trade name infringement upon a finding that the infringing party acted in bad faith with the intent to capitalize on plaintiff's reputation and goodwill. For example, in *Food Fair Stores, Inc. v. Lakeland Grocery, Corp., supra,* the court found, in addition to a showing that the name "Food Fair" had a secondary meaning, that "the defendant deliberately and knowingly appropriated the plaintiff's name for its own business and actually imitated the character and style of the signs by which the plaintiff's business was made known to the public." 301 F. 2d at 163. With respect to this practice of intentionally capitalizing on another's goodwill, the court stated: "The existence or non-existence of good faith on the part of the second user of the trade name is a powerful factor in determining whether the name is entitled to protection in an area to which the business it identifies has not actually extended. Indeed, it is pointed out in Nims on Unfair Competition and Trademarks, Section 218b, page 649, that to some extent the emphasis of the inquiry has been shifted in determining whether a trademark or trade name is entitled to extra-territorial protection, so that in some cases much more stress is placed upon the question of good faith and much less on the extent to which the name is known in a given area." 301 F. 2d at 162-63. Similarly, in *Golden Slipper Square Club v. Golden Slipper Restaurant & Catering, Inc.,* 371 Pa. 92, 88 A. 2d 734 (1952), this Court enjoined the use of the name "Golden Slipper" by a non-

competing business upon a finding that the name was adopted with the specific intention of trading upon plaintiff's reputation.

In the instant case, however, the record is devoid of any evidence which tends to show that appellee, in appropriating the name "Drug Fair", intended to trade upon appellant's reputation. There has been absolutely no showing of bad faith on the part of the appellee.

Notwithstanding appellee's good faith and the failure to establish a secondary meaning, appellant alleges that it has a right to relief because appellee's incorporation under the name of Drug Fair, Inc. and registration of the fictitious name "Drug Fair" creates an unfair and unreasonable limitation on appellant's plans to expand in Pennsylvania. Apparently, appellant believes that it is entitled to enjoin the use of the name "Drug Fair" in market areas where it is not doing business if a possibility exists that its business may eventually expand into such markets. As the court below pointed out, this novel contention is simply not the law. We have found no authority, and appellant has not suggested any, which would permit the owner of a trade name to enjoin its use in an area where it has acquired no secondary meaning solely on the theory that the effectiveness of future expansion efforts might be impaired.

Finally,[3] appellant argues that even if it is not en-

---

[3] Although appellant also alleges that the appellee is guilty of violating the Lanham Act, 15 U.S.C.A. §1051 et seq., this claim does not merit extensive discussion. The Lanham Act provides certain protection to an owner of a trademark which has been registered in accordance with the provisions of the Act. Section 32 of the Act provides that the owner of a registered trademark may bring an action against "(1) Any person who shall, without the consent of the registrant—(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is *likely*

titled to prevent appellee from using the name "Drug Fair", appellee's use of the name should be restricted to Northeast Philadelphia—the geographical area where appellee's two stores are located. This assertion is untenable. As we have repeatedly emphasized throughout this opinion, appellant has failed to establish that the name "Drug Fair" has a secondary meaning in any part of Pennsylvania. Certainly, it is neither rational nor logical to enjoin the use of the name in an area where appellant is not actually doing business and where the name "Drug Fair" is not even known to the consuming public.

Decree affirmed, each party to pay own costs.

---

*to cause confusion, or to cause mistake, or to deceive. . . ."* 15 U.S.C.A. §1114(1)(a) (emphasis added).

Even assuming, *arguendo*, that appellee's use of the name "Drug Fair" is "in commerce" within the meaning of the Act, we have already pointed out that the record clearly shows that appellant's name had acquired no secondary meaning in the minds of the purchasing public in Pennsylvania. Therefore, there can be no likelihood of confusion, mistake or deception by appellee's use of the name.