351 A.2d 207

PIERCING PAGODA, INC.

v.

Paul J. HOFFNER, Jr., and Kay Hoffner, t/a
Piercing Pagoda of York,
Appellants.

Supreme Court of Pennsylvania.

Submitted June 26, 1975.

Decided Jan. 29, 1976.

502

Bernard V. O'Hare, O'Hare & Heitczman, Bethlehem, for appellants.

Donald B. Corriere, Bethlehem, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

JONES, Chief Justice.

This appeal follows the entry of a final decree in equity of the court en banc against the appellants, Paul J. Hoffner, Jr., and Kay Hoffner. The decree enforces a restrictive covenant not to compete, and requires an accounting from the appellants for amounts earned in violation of a provision in the parties' franchise agreement which provides that the appellants purchase all their earring requirements from the appellee, Piercing Pagoda, Inc.

Piercing Pagoda, Inc., is a Pennsylvania corporation which engages in the selling of earrings and provides an ear piercing service for its customers. Piercing Pagoda was originally started through the efforts of Bernard Cohen, Piercing Pagoda's sole stockholder. Prior to Mr. Cohen's dealings with the appellants he owned and operated a "Piercing Pagoda" at Whitehall Mall in the City of Allentown.[1]

Sometime in October of 1970, appellants contacted Bernard Cohen and expressed their interest in operating a Piercing Pagoda in York, Pennsylvania. The appellants procured a location for the store, and took a lease in their names. Thereafter, a letter of intent creating franchise rights in the Hoffners was signed by the parties.

Piercing Pagoda, in the November 1970 letter of intent, agreed to "honor the exclusive territorial rights" of the Hoffners "to open three . . . Pagoda within the York City, Berks City and Lancaster City areas." In addition, appellee agreed to supply the Hoffners with a line of earrings, and all materials and supplies necessary for the operation of their businesses. Piercing Pagoda

1. Piercing Pagoda lists its principle place of business as 58 West Broad Street, Bethlehem, Northampton County, Pennsylvania.

also agreed to train an employee of the Hoffners in the proper method of ear piercing, and to teach the operational methods required in running the businesses.

The Hoffners agreed to purchase all earring requirements from Piercing Pagoda at 10% over listed cost, to pay a franchise price of $7,000 and to submit to one inspection per month by a staff person of Piercing Pagoda, Inc.[2] In addition, the franchisee agreed to the following covenant not to compete:

"In the event of the termination of this business contract and following a 30 day written notice by registered mail, or otherwise mutually agreed, the franchisee will not own, operate or participate in any business employing ear piercing; for three years within 30 miles of any existing Pierding [sic] Pagoda or for one year where the business had been operated and terminated."

Apparently the Hoffners were satisfied with the terms of the original agreement for they purchased franchise rights in four other locations.[3] After the filing of the instant law suit the appellants opened an additional operation at King of Prussia Mall which is within ten to fifteen miles of the Piercing Pagoda operation, owned and operated by appellee at the Plymouth Meeting Mall.

On March 19, 1972, the appellants terminated their agreement by letter charging that the appellee improperly overcharged them on certain quantities of earrings.[4] The appellee brought this equitable action seeking the enforcement of the covenant not to compete which was contained in the original letter of intent and an accounting.

2. The franchisee also agreed to conform to sanitary controls and business and ethical practices as established by the franchisor.

3. Franchise rights were given to the appellants to set up two new Piercing Pagodas in Harrisburg, one in Allentown and another near Reading.

4. It appears from the record that shortly after the appellants terminated their agreement with the appellee they changed the names of their Piercing Pagoda stores to Earring Pagoda.

The chancellor found that although Piercing Pagoda had a legitimate interest to protect, which warranted the use of a restrictive covenant, the enforcement of the covenant was not proper in this case since the franchisor did not bargain for a share of the profits but for the "requirement that the franchisee purchase all earring inventory from the franchisor." In the chancellor's opinion the appropriate relief was found in requiring the appellants to purchase all their earring requirements from the appellee for five years. The chancellor found that the appellee did not breach the agreement by engaging in over-pricing.

Both sides challenged the chancellor's conclusions of law and the decree nisi. In addition, the appellant challenged the chancellor's finding of fact, arguing principally that the appellee's over-pricing was of such a nature that it excused the appellants' termination of the agreement.

The court en banc made no change in the original findings of fact but found that the restrictive covenant was ancillary to a lawful business arrangement between the parties, and therefore enforceable. In so concluding, the court en banc held that the covenant protected valid economic interests of the corporation and that the original franchise agreement afforded important economic advantages to the appellants. Accordingly, the court en banc enforced the original covenant, ordered an accounting, and vacated the chancellor's original decree nisi.

In their appeal to this Court, the appellants make a number of contentions. Many of the arguments center around their view that the restrictive covenant is invalid and unenforceable. Appellants also claim that even if it is valid they had a right to terminate their dealings with the appellee because of an alleged breach of the letter of intent on the part of the appellee.

The law in this Commonwealth for more than a century has been that in order to be enforceable a re-

strictive covenant must satisfy three requirements: (1) the covenant must relate to either a contract for the sale of goodwill or other subject property or to a contract for employment; (2) the covenant must be supported by adequate consideration; and (3) the application of the covenant must be reasonably limited in both time and territory. *Maintenance Specialties v. Gottus*, 455 Pa. 327, 331, 314 A.2d 279, 281 (1974) (Jones, C. J., concurring); *Jacobson & Co. v. International Environmental Corp.*, 427 Pa. 439, 235 A.2d 612 (1967); *Capital Bakers, Inc. v. Townsend*, 426 Pa. 188, 231 A.2d 292 (1967); *Barb-Lee Mobile Frame Co. v. Hoot*, 416 Pa. 222, 206 A.2d 59 (1965); *Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 136 A.2d 838 (1957). *See also* Restatement of Contracts § 515(e) (1932).

The focus of appellants' brief is centered on their contention that the restrictive covenant fails to meet this Court's first requirement for the finding of a valid restrictive covenant. Specifically, the appellants would have us hold that the business interest transferred by the appellee to the appellants in the original franchise agreement, and its subsequent modifications, is not the type of interest which is protectable by the use of a covenant not to compete. After a complete review of the record, we are unpersuaded by appellants' contention.

This Court has previously discussed the use of restrictive covenants in two types of cases. The first are cases where an employer has attached a restrictive covenant to an employee's contract of employment. *Maintenance Specialties v. Gottus*, 455 Pa. 327, 314 A.2d 279 (1974) and *Jacobson & Co. v. International Environmental Corp.*, 427 Pa. 439, 235 A.2d 612 (1967). The second are cases where a restrictive covenant has been attached to a contract for the sale of a business. *Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 136 A.2d 838 (1957). In both instances the ancillary rule, repeated by this Court in *Morgan's Home Equipment Corp.*, was held

to be applicable. 390 Pa. at 629, 136 A.2d 838. This principle was extracted from the leading case on the subject, *United States v. Addyston Pipe & Steel Co.*, 85 F. 271 (6th Cir. 1898), *aff'd.*, 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 (1899).

> "This very statement of the [ancillary] rule implies that the [restraint] must be one in which there is a main purpose, to which the covenant in restraint of trade is merely ancillary. The covenant is inserted only to protect one of the parties from the injury which, in the execution of the contract or enjoyment of its fruits, he may suffer from the unrestrained competition of the other. The main purpose of the contract suggests the measure of protection needed, and furnishes a sufficiently uniform standard by which the validity of such restraints may be judicially determined. . . . But where the sole object of both parties in making the contract as expressed therein is merely to restrain competition and enhance or maintain prices, it would seem that there was nothing to justify or excuse the restraint, that it would necessarily have a tendency to monopoly, and therefore would be void. . . ."

85 F. at 282–283.

Thus, the question which we must face is whether the appellee franchisor had a protectable interest in the sale of his franchise to the appellants, such that a reasonable covenant not to compete effective upon the termination of the franchise would be enforceable against them. While we have never before ruled on the validity of a restrictive covenant inserted in a franchise agreement, this question must be governed by the controlling principles stated in our prior cases and *Addyston Pipe, supra*.

In its simplest terms, a franchise is a license from the owner of a trademark or trade name permitting another to sell a product or service under the name or

mark. More broadly stated, the franchise has evolved into an elaborate agreement by which the franchisee undertakes to conduct a business or sell a product or service in accordance with methods and procedures prescribed by the franchisor, and the franchisor undertakes to assist the franchisee through advertising, promotion and other advisory services. The franchise may encompass an exclusive right to sell the product in a specified territory. *See* 15 Business Organizations, Glickman, Franchising § 2.01.

In those jurisdictions where a covenant not to compete executed in favor of a franchisor has been examined, the Courts have held that while a mere manner of doing business is not sufficient to constitute a protectable interest, which will sustain a covenant not to compete, the existing franchise itself is a legitimate business interest and therefore protectable. *Williams v. Shrimp Boat, Inc.*, 229 Ga. 330, 191 S.E.2d 50 (1972); *Shakey's Inc. v. Martin*, 91 Idaho 758, 430 P.2d 504 (1967); *McDonald's System, Inc. v. Sandy's Inc.*, 45 Ill.App.2d 57, 195 N.E.2d 22 (1963). These authorities recognize that to hold that no protectable interest exists overlooks the basic product which the franchisor has to sell, namely the franchise itself, and that the franchisee, in order to secure the benefits of the franchise, executes the covenant not to compete effective upon termination. *See Generally*, Annot. 50 A.L.R.3rd 746 and cases cited therein.

In the instant case, the franchise agreement provided a service in which enterprise appellants received, as the court en banc found, an opening line of inventory; basic training in the fundamentals of ear piercing; directions for market development; the use of a corporate name that carried with it some degree of identity in the Eastern part of Pennsylvania; and the exclusive right to sell the product in an exclusive area. By the use of the franchisor's name and ability the franchisees availed them-

510

selves of the beneficial provisions of the franchise contract. In so doing, they made use of the franchisor's name which the law recognizes as a protectable interest, *Drug-Fair Community Drug Co., Inc. v. Drug-Fair, Inc.*, 453 Pa. 454, 309 A.2d 363 (1973). Under the facts of this case, the existing franchise is a legitimate business interest and therefore protectable.

We agree with the court en banc that the requirements clause in the contract does not detract from the protectable interest of the franchisor which can be validly protected by a covenant not to compete. The covenant faces the economic reality that continued operation of the appellants' stores subsequent to the termination of the agreement would adversely affect the ability of the franchisor to secure another franchisee in the same territory. This is a legitimate interest which is not diminished by the parties' requirements contract under the facts of this case. *See Harris Calorific Co. v. Marra*, 345 Pa. 464, 29 A.2d 64 (1942); Restatement of Contracts § 515 (1932).

Appellants next urge us to find that they did not violate the terms of the restrictive covenant. Further, they challenge the court en banc's interpretation of the covenant not to compete. In addition, the appellants urge that even if we find that they violated the covenant, we should hold the covenant unenforceable on the ground that it is not reasonably limited in space, time and scope, and that it would impose an undue hardship on the franchisee. *Morgan's Home Equipment Corp., supra;* Restatement of Contracts § 516(f) (1932).

In those jurisdictions which have considered the enforceability of franchise agreements which contain covenants not to compete, the courts have, for purposes of analysis, analogized them to covenants included in employment contracts. *H & R Block v. Lovelace*, 208 Kan. 538, 493 P.2d 205 (1972); *See Generally*, 50 A.L.R.3rd at 747. We believe this construction takes into account

the hardship imposed by the covenant not to compete on an employee or franchisee when he is prevented from practicing his trade or business and the need for such a covenant by the employer or franchisor when it is reasonably necessary to protect his business interests. We feel that these factors are equally important in both relationships. *See Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. at 631–32, 136 A.2d at 846. Thus, our Courts will permit the equitable enforcement of a covenant not to compete included in a franchise agreement where the restrictions are reasonably necessary for the protection of the franchisor without imposing undue hardship on the franchisee and the restrictions are reasonably limited as to duration of time and geographical extent.

■ Appellant asserts that the court en banc improperly applied the three year provision of the covenant not to compete to all six of the appellants' stores even though only one of the six is within thirty miles of appellee's Piercing Pagoda store. We agree, in part, with appellants' contention.

We believe that the proper construction of the covenant is to apply the three year provision only to appellants' King of Prussia store since it is the only store within thirty miles of any existing Piercing Pagoda owned by appellee. The remaining five stores, which are not within thirty miles of appellee's store, come within the one year provision of the covenant. These five stores were originally operated under the Piercing Pagoda franchise and then terminated to take on independent identities as Earring Pagodas.[5] As the covenant applies to these five stores, it restricts the appellant from operating an ear piercing business at the particular franchise site where a Piercing Pagoda originally operated for a one year period. By its terms, the covenant recognizes

5. See footnote 4, *supra.*

that the appellee has a greater interest in those areas where appellee actually operates a store than in those areas where his franchisees alone are in operation. This construction affords adequate protection to the business interest of the appellee without undue hardship to the appellant.

We reject the appellants' argument that the covenant in this case is worldwide in scope. It applies only to that thirty mile area around appellee's Plymouth Meeting Mall store and those five additional store sites which the appellants originally operated under the franchise arrangement with the appellee. This is not a covenant which restricts the ability of the appellants to pursue their business interests in areas other than that limited area around appellee's existing Piercing Pagoda operation and the five franchise sites given to the appellant under the original franchise agreement, and its subsequent modifications. This is hardly a covenant which can be classified as without geographic limitation. The covenant in this case is reasonably limited since it is within such territory and during such time as may be reasonably necessary for the protection of the franchisor without imposing undue hardship on the franchisee. *See* Restatement of Contracts, § 516(f) (1932); *Morgan, supra.*

The appellants also question whether it was proper for the court en banc to restrain the appellants' operation of their King of Prussia store since the appellee failed to particularly mention this operation in his original complaint. In setting forth the appellee's cause of action he named those five stores which were in operation at the time the appellee filed his complaint. He failed to name the King of Prussia operation because it came into existence after the complaint was filed. However, the appellee's complaint did not set forth those five operations as exclusive of any violations of the covenant which might occur after the filing of the complaint but

merely as examples of the violations of the covenant by the appellant. Moreover, the appellee's prayer for relief sought enforcement of the covenant with respect to those five operations and "further relief as is just and reasonable."

A review of the testimony indicated that the court en banc properly included the appellants' King of Prussia Mall store within the terms of the final decree. In fact, Mr. Hoffner admitted on cross-examination that he was running his King of Prussia operation within ten to fifteen miles of the appellee's Plymouth Meeting Mall operation in violation of the restrictive covenant. Where equity assumes jurisdiction for one or more purposes, it will retain jurisdiction for all purposes to give complete relief and to do complete justice between the parties. This may include an award of equitable relief not covered by the original prayer. *Lafean v. American Caramel Co.*, 271 Pa. 276, 114 A. 622 (1921). *See also, 46 S. 52nd Street Corp. v. Manlin*, 404 Pa. 159, 172 A.2d 154 (1961); *Nedwidek v. Nedwidek*, 371 Pa. 621, 92 A.2d 536 (1952); *McGinn v. Benner*, 180 Pa. 396, 36 A. 925 (1897); 13 P.L.E. Equity § 14.

Accordingly, the decree of the court below must be modified to provide that those five franchise operations of the appellants not within thirty miles of any existing Piercing Pagoda are subject to the covenant not to compete for a period of one year. The appellants' King of Prussia store being within thirty miles of the appellee's Plymouth Meeting Mall store is subject to the terms of the covenant not to compete for a period of three years.

A final issue raised by appellants is whether the appellants had a right to terminate their dealings with the appellee because he allegedly materially breached the terms of the contract. Both the chancellor and the court en banc found no such breach. A chancellor's findings of fact, approved by a court en banc, have

all the force and effect of a jury's verdict if they are supported by adequate evidence and ordinarily will not be disturbed on appeal. *Jacobson & Co. v. International Environmental Corp., supra; Hayes v. Altman,* 424 Pa. 23, 26, 225 A.2d 670 (1967). After a complete review of the record we have found nothing which would cause us to disregard the chancellor's findings of fact.

The decree of the Court of Common Pleas of Northampton County is modified in accordance with this opinion, and as modified affirmed. Costs to be paid by the appellants.

MANDERINO, J., filed a concurring and dissenting opinion.

ROBERTS, J., filed a dissenting opinion.

MANDERINO, Justice (concurring and dissenting).

I concur in the result reached by the majority except as to that portion of the covenant prohibiting appellant from doing business within "30 miles" of any existing Piercing Pagoda. The 30 mile distance outlines an unnecessarily large area not necessary for the protection of the appellee.

ROBERTS, Justice (dissenting).

I dissent.

The majority asserts that "Under the facts of this case, the existing franchise is a legitimate business interest and therefore protectable." Supra at 212. Nowhere, however, does it demonstrate that the franchisor had a protectable interest sufficient to justify enforcing the restrictive covenant.[1]

---

1. Not only does the majority enforce the covenant, it does so for the entire thirty mile area claimed.

 

The "franchise" [2] involved here did not involve any exclusive product, secret formula, or other trade secret; nor did it involve special training, customer relations established on behalf of and at the franchisor's expense, or any appropriation of the franchisor's good will [3] by the franchisee. So far as the facts appear, the franchisor engaged in no advertising nor made any other attempt to build up the franchisee's business. I am at a loss to explain what legally protectable interest this restrictive covenant protects.

2. The "franchise" agreement in reality seems to be an ordinary requirements contract.

3. The franchisee, after terminating the contract, changed the name of his stores to "Earring Pagoda."