

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-10-1998

# Krebs Chrysler v. Valley Mtr Inc

Precedential or Non-Precedential:

Docket 96-3702

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Krebs Chrysler v. Valley Mtr Inc" (1998). *1998 Decisions.* Paper 76.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/76

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 10, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 96-3702 and 96-3757

KREBS CHRYSLER-PLYMOUTH, INC.
    Appellant in 96-3702

v.

VALLEY MOTORS, INC., d/b/a REA MOTORS; OFFICE
OF THE U.S. TRUSTEE; RONALD J. CHARAPP;
AMERICAN AUTO SALES INC., t/d/b/a Wilkinsburg
Rambler, Inc.; CHRYSLER CORPORATION; GENERAL
MOTORS ACCEPTANCE CORPORATION; BENKE
MOTORS, INC.; VERONA MOTOR SALES, INC.,
STEPHEN I. GOLDRING

KREBS CHRYSLER-PLYMOUTH, INC.

v.

VALLEY MOTORS, INC., d/b/a REA MOTORS; OFFICE
OF THE U.S. TRUSTEE; RONALD J. CHARAPP;
AMERICAN AUTO SALES INC., t/d/b/a Wilkinsburg
Rambler, Inc.; CHRYSLER CORPORATION; GENERAL
MOTORS ACCEPTANCE CORPORATION; BENKE
MOTORS, INC.; VERONA MOTOR SALES, INC.,
STEPHEN I. GOLDRING
    CHRYSLER
    CORPORATION,
    Appellant in 96-3757

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
D.C. Civ. No. 95-01860

Argued Thursday, December 11, 1997

Before: NYGAARD and ALITO, Circuit Judges, and
DEBEVOISE, District Judge*

(Opinion Filed April 10, 1998)

Thomas E. Reilly
Davis & Reilly
437 Grant Street
1124 Frick Building
Pittsburgh, PA 15219

Attorney for Krebs Chrysler–
Plymouth, Inc.

James F.B. Daniels
 (argued)
1102 Grand Avenue
Suite 1500
Kansas City, MO 64106

Attorney for Chrysler Corporation
and Krebs Chrysler-Plymouth, Inc.

David E. Tungate (argued)
Eckert, Seamans, Cherin & Mellott
600 Grant Street
42nd Floor
Pittsburgh, PA 15219

Attorney for General Motors
Acceptance Corporation

_____

* The Honorable Dickinson R. Debevoise, Senior District Judge for the
District of New Jersey, sitting by designation.

OPINION OF THE COURT

NYGAARD, Circuit Judge.

Appellants, Krebs Chrysler-Plymouth, Inc. and Chrysler Corporation, challenge a bankruptcy court's order denying their motions to reconsider, alter, or amend its prior decisions. Those decisions approved the rejection of a buy-sell agreement between debtor Valley Motors, Inc. and Krebs and the subsequent assumption and auction sale of the underlying franchises. In response to Chrysler's appeal, General Motors Acceptance Corporation has filed a motion to dismiss for lack of standing. We will grant GMAC's motion and also dismiss Krebs's appeal as moot pursuant to 11 U.S.C. S 363(m) for failing to obtain a stay pending appeal.

I.

Valley Motors, Inc. operates an automobile dealership in the Pittsburgh, Pennsylvania area and is a party to three sales and service franchise agreements. In one of these, Chrysler allows Valley to sell and service Jeep and Eagle automobiles. Valley executed a buy-sell agreement to sell its interest in the Jeep-Eagle franchise to Krebs for $295,000. Half of that amount was paid upon the execution of the buy-sell agreement, and the second half was due upon the occurrence of two events: Chrysler's approval of the transfer as Jeep-Eagle franchisor and the favorable resolution of any protests filed under state law by Krebs's competitors. Although Chrysler approved the transfer to Krebs, several competing auto dealerships protested it. When Valley filed its Chapter 11 petition, those protests became subject to the automatic stay and remain unresolved.

Valley moved to assume the buy-sell agreement with Krebs under section 365 of the Bankruptcy Code, which authorizes a trustee to assume or reject executory contracts. 11 U.S.C. S 365. The protesting dealerships objected to the motion. Valley then amended its motion to

3

further assert that assumption was in the best interest of the bankruptcy estate and satisfied the requirements of the business judgment rule. Chrysler "conditionally objected" to the assumption, alleging that Valley had previously defaulted under the Jeep-Eagle franchise, and it should pay over two million dollars in lost-volume sales and damages to Chrysler's intangible assets and provide adequate assurances of Krebs's future performance under the franchise. Another auto dealer, Ronald Charapp, also objected, because he had made an offer to purchase all of Valley's franchises, inventory and lease obligations for $425,000. Charapp suggested the bankruptcy court conduct a hearing to entertain other offers on the sale of Valley's assets.

On the same day as the hearing on the amended motion to assume the buy-sell agreement, but before a decision, Valley moved to withdraw its amended motion, arguing that Charapp's, not Krebs's, offer would be in the best interest of the estate. The next day, the bankruptcy court granted Valley's motion to withdraw its amended motion. The day after that, Valley moved to reject the buy-sell agreement pursuant to section 365. Valley then filed a second motion to sell all its franchises (including the Jeep-Eagle franchise), parts, shop materials, and fixed and miscellaneous assets to Charapp for $425,000. The motion stated that the sale was conditioned upon Chrysler's and the other franchisors' approval. Valley then filed a third motion to assume the three franchise agreements. Chrysler and Krebs objected to all three motions. Charapp also expressed his reservations about the suggested sale because he had learned that Valley's Dodge franchise was soon to expire, and that Dodge was unwilling to extend the term.

The bankruptcy court granted Valley's motions to reject the buy-sell agreement and to assume and sell the three sales and service franchises. During the hearing on Valley's motion to sell, however, the court allowed Charapp to withdraw his offer and then held an auction on the three franchises "as is, where is." Krebs won the bidding on all three and paid ten percent of the purchase price to Valley on the day of the hearing. The price for the Jeep-Eagle

4

franchise was $230,000. The bankruptcy court entered an order affirming the sale. Krebs has not paid the balance of the bid and has refused to close on the sale.

Krebs instead moved for reconsideration of the orders granting Valley's three motions. Chrysler moved for reconsideration of the order to assume and the order to sell the franchises, but not the order to reject the buy-sell agreement. In response, Valley moved to compel Krebs to close on the ordered sale. The bankruptcy court denied Krebs's motions. It found that the buy-sell agreement was executory, that the business judgment test was applicable, and that Valley satisfied it. Accordingly, it upheld its order permitting Valley to reject the agreement under section 365. The bankruptcy court also found that Krebs did not have an equitable interest in the first $147,500 payment as either a set-off or recoupment against the amount due from the auction sale. The bankruptcy court ruled that, at most, Krebs had an unsecured claim because Valley's rejection operated as a prepetition breach of the buy-sell agreement.

Chrysler's arguments largely paralleled Krebs's, except Chrysler also wanted the bankruptcy court to require Valley to comply with section 365(b)(1)(A)-(C) and (f)(2), which require debtors who have defaulted on executory contracts to cure the breaches or provide adequate assurance of future performance before assuming them. Valley opposed this motion, claiming that its breaches under the franchises were nonmonetary obligations excusing the statutory obligation to cure or assure performance. The bankruptcy court deferred its decision on Chrysler's motion because it did not have an adequate record and has yet to schedule an evidentiary hearing on Chrysler's motion.

Finally, the bankruptcy court granted Valley's motion to compel Krebs to close on the ordered sale. It rejected Krebs's argument that the closings were conditioned on approval from the respective franchisors. The court held that the sale was not conditional; it was "as is, where is."

Only Krebs appealed the bankruptcy court's order to the district court, although Chrysler filed a brief and argued in support of Krebs's position. The district court affirmed the bankruptcy court's decision and adopted its opinion. Now,

however, both Krebs and Chrysler have filed notices of appeal.

The bankruptcy court had jurisdiction by virtue of 28 U.S.C. S 157, and the district court had jurisdiction over Krebs's appeal under 28 U.S.C. S 158(a). We exercise jurisdiction under 28 U.S.C. S 158(d) over final decisions of district courts entered under section 158(a).

## II. Chrysler's Appeal

GMAC, a secured creditor, moved to dismiss Chrysler's appeal for lack of standing. GMAC argues that Chrysler is not a "person aggrieved" and therefore does not have standing to appeal the bankruptcy court's orders. To support its argument, GMAC points out that, notwithstanding the outcome on the merits, Krebs will be the owner of the Jeep-Eagle franchise; Chrysler will not be directly and pecuniarily affected. Chrysler argues that it is a person aggrieved and has standing despite its failure to comply with the Federal Rules of Bankruptcy Procedure.

## A. Jurisdiction

Chrysler is in an unusual procedural position because it appeals from the district court's affirmance of a bankruptcy court order it never appealed from. A party may "appeal from a final judgment, order, or decree of a bankruptcy judge to a district court" as of right "by filing a notice of appeal with the [bankruptcy court] clerk within the time allowed by Rule 8002." Fed. R. Bankr. P. 8001. Moreover, the "[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court . . . deems appropriate." Id. By implication, Chrysler's failure to file a notice of appeal to the district court from the bankruptcy court does affect the validity of its appeal to the Court of Appeals. See Shareholders v. Sound Radio, Inc., 109 F.3d 873, 879 (3d Cir. 1997) ("The failure to file a timely notice of appeal [from the bankruptcy court] creates a jurisdictional defect barring appellate review."); In re Colon, 941 F.2d 242, 245-46 (3d Cir. 1991)

6

("a late filing is insufficient to vest the district court with jurisdiction of the appeal").

Rule 8002 gives persons aggrieved by a bankruptcy order ten days to file a notice of appeal. Fed. R. Bankr. P. 8002(a). However, that rule also provides for an extension in certain circumstances:

> "Effect of Motion on Time for Appeal. If any party makes a timely motion of a type specified immediately below, the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding. This provision applies to a timely motion: (1) to amend or make additional findings of fact under Rule 7052, whether or not granting the motion would alter the judgment; [or] (2) to alter or amend the judgment under Rule 9023 . . . . A notice of appeal filed after announcement or entry of the judgment, order, or decree but before disposition of any of the above motions is ineffective to appeal from the judgment, order, or decree, or part thereof, specified in the notice of appeal, until the entry of the order disposing of the last such motion outstanding. Appellate review of an order disposing of any of the above motions requires the party, in compliance with Rule 8001, to amend a previously filed notice of appeal."

Fed. R. Bankr. P. 8002(b). Because the bankruptcy court hasn't ruled on Chrysler's motion to alter or amend, neither Krebs nor Chrysler can appeal the underlying orders at this time. Also, the bankruptcy court has not ruled on Chrysler's motion to reconsider, so Chrysler may not found its appeal here on that motion. Finally, while Krebs has appealed the denial of its motion to reconsider, Chrysler did not appeal that decision, either. Hence, the district court did not have jurisdiction to hear an appeal from Chrysler. It follows that we lack jurisdiction over Chrysler's appeal from the district court order emanating from Krebs's appeal.

In the cases cited by Chrysler and GMAC, the parties had first appealed a bankruptcy court order to the district court. See Travelers Ins. Co. v. H.K. Porter Co., 45 F.3d 737,

7

740–41 (3d Cir. 1995) (order granting motion to vacate withdrawals and defaults of claims); In re Dykes, 10 F.3d 184, 186 (3d Cir. 1993) (order confirming Chapter 13 plan); In re El San Juan Hotel, 809 F.2d 151, 152–53 (1st Cir. 1987) (order granting U.S. leave to sue a former trustee); In re Fondiller, 707 F.2d 441, 441 (9th Cir. 1983) (order authorizing employment of special counsel for bankruptcy trustee). Chrysler cites only one case that even arguably supports its position regarding our jurisdiction over its appeal. In In re Colonial Broad. Corp., 758 F.2d 794 (1st Cir. 1985), the bankruptcy court issued an order accepting Joaquin Villamil's offer to buy the debtor's assets. The debtor, the committee of debtor's equity security holders, and Charles Woods (a potential buyer who submitted a higher, but belated bid) all filed motions for reconsideration. After the bankruptcy court denied these motions, all three appealed the underlying order accepting the Villamil bid to the U.S. District Court for the District of Puerto Rico. The district court dismissed the debtor's appeal for failure to prosecute. Although the equity security holders and Woods filed separate appeals, the equity security holders "appeared in Woods' appeal by both filing a statement of intent to join and fully support Woods' position and then filing their own brief." Id. at 798. The district court dismissed the remaining two appeals because it held that the bankruptcy court's order accepting the Villamil bid was interlocutory, and not appealable. Considering the notices of appeal as motions for leave to appeal an interlocutory order, the district court denied leave to appeal because a subsequent bankruptcy court order confirming the sale on different terms mooted the order accepting the bid. All three previous appellants appealed to the Court of Appeals for the First Circuit, including the debtor whose appeal had been dismissed.

The Court of Appeals first addressed the debtor's untimely appeal from the district court's dismissal:

> "We begin by noting that we have no jurisdiction over the appeal of the debtor, ACBC. ACBC's appeal . . . was dismissed by the district court for failure to prosecute. No notice of appeal was filed within the thirty-day period allowed for appeals. Fed. R. App. P. 4(a). The

8

requirements of Rule 4(a) are "mandatory and jurisdictional," and ACBC's failure to comply with these requirements leave this court without jurisdiction."

Id. at 799 (citation omitted). The Court continued, "Nor can we consider ACBC a proper party to appeal the district court's denial of the Woods appeal since, unlike the Equity Security Holders, ACBC did not either file an appearance or join in that action." Id. Chrysler now cites this statement for the proposition that it can appeal to this Court without first appealing from the bankruptcy court because it submitted a brief to the district court.

We reject this argument. First, the sentence in Colonial Broadcasting upon which Chrysler relies is dicta, in light of the Court's previous determination that the debtor's appeal should be dismissed as untimely. Here, although Chrysler has timely appealed from the district court's decision, it failed to appeal from the bankruptcy court. Second, to allow a party like Chrysler to appear before a court of appeals without first appealing to the district court, even if that party somehow participated in the district court proceedings, would nullify bankruptcy rules 8001 and 8002. Following Chrysler's logic, if a party at the bankruptcy court level could convince an appellant at the district court level to name it as an appellee, it would be able to bypass district court review--hardly a desirable or contemplated result. This, however, does not mean that a non-party can never appeal a bankruptcy court order. The "person aggrieved" rule covers that situation. If an aggrieved party files a timely appeal from both the bankruptcy court and the district court, the court of appeals will have jurisdiction over its claim.

B. Standing as a Person Aggrieved

The "person aggrieved" rule states that only those whose pecuniary interests are directly and adversely affected by a bankruptcy court order that "diminishes their property, increases their burdens, or impairs their rights," may appeal. Travelers, 45 F.3d at 741-42 (quoting Dykes, 10 F.3d at 187). "[W]hether someone is a `person aggrieved' is normally a question of fact to be determined by the district

court." Travelers, 45 F.3d at 742; see also Dykes, 10 F.3d at 188. Because the facts were undisputed in Travelers and Dykes, we could reach the standing issues. Here, however, the parties dispute whether Valley's obligations to Chrysler are recoverable under the cure provisions of section 365(b) or are excusable nonmonetary obligations. This precise dispute prompted the bankruptcy court to delay ruling on Chrysler's motion to reconsider, and it has not ruled or even scheduled an evidentiary hearing on that motion. Hence, for now there is simply no record support for Chrysler's argument that it is a person aggrieved.

Moreover, we doubt that Chrysler is a "person aggrieved," even under its version of the facts. In its response to GMAC's motion to dismiss its appeal, Chrysler alleged that it suffered damages because Valley had breached its franchises (although it was going to waive its remedies if Krebs acquired the franchises through the buy-sell agreement). Admittedly then, Chrysler's only pecuniary interest is whether it will receive a cure for those defaults under section 365. Although the bankruptcy court has yet to rule on that issue, Chrysler has not shown how its interest will be affected whether the franchises are transferred to Krebs under the buy-sell agreement or via the auction sale. Even if the franchises were assigned pursuant to the buy-sell agreement, no one disputes that the underlying franchises were executory contracts, and there is nothing to relieve Valley from assuming them before it could perform under the buy-sell agreement. Furthermore, the bankruptcy court has yet to decide whether Chrysler is entitled to cure or assurances under section 365 because it has not ruled on Chrysler's motion to reconsider or amend. Hence, Chrysler is simply not a person aggrieved and does not have standing to pursue this appeal.

C.

We acknowledge that we have occasionally allowed non-parties to appeal district court decisions in nonbankruptcy contexts, but those cases are either inapposite or distinguishable. In Delaware Valley Citizens Council for Clean Air v. Davis, 932 F.2d 256 (3d Cir. 1991), citizens

groups appealed the dismissal of one of the four counts in their complaint. We allowed the EPA to join them, stating "we believe that the EPA has a sufficient stake in the outcome of this case to join the Citizens' appeal as a party-appellant because Pennsylvania could use the judgment to collaterally estop the EPA in [a related] administrative appeal." Id. at 263 n.6. Here, Chrysler does not argue that our decision in this case will have any preclusive effect upon it in any other proceeding.

In Caplan v. Fellheimer Eichen Braverman & Kaskey, 68 F.3d 828 (3d Cir. 1995), involving a sexual harassment suit by a female attorney against her former law firm, we allowed the firm's insurance carrier, Vigilant, standing. In doing so, we established the following rule:

> "Generally, it is true that those who were not parties before the district court may not appeal an order of the district court. We have, however, recognized that a non-party may bring an appeal in a situation where three conditions are met: 1) the equities favor the appeal; 2) the non-party has participated in some way in the proceedings before the district court; and 3) the non-party has a stake in the outcome of the district court proceedings, which is discernable from the record."

Id. at 836.

Here, Chrysler participated in the district court by filing a brief and arguing in support of Krebs's position, albeit over GMAC's objection. Thus, the second requirement is satisfied. Regarding the first, we see no equities favoring Chrysler. Certainly, Chrysler has an interest in who owns their franchises. This interest is embodied in the "veto" power it has over a proposed transfer of the Jeep-Eagle franchise. However, the transfer under the buy-sell agreement and the auction sale ordered by the bankruptcy court were both to Krebs--a Chrysler approved assignee. Therefore, the interest in approving subsequent owners of Chrysler-product franchises has been satisfied. Chrysler's equity argument fails. The third element is similar to the person aggrieved test, analyzed above.

11

Thus, even under these nonbankruptcy cases, Chrysler cannot appeal. In sum, not only has Chrysler attempted to circumvent proper procedure, but the bankruptcy court's order has had no direct bearing on its pecuniary interests. The order has not diminished its property, increased its burdens or impaired its rights. Those alleged effects have already occurred by virtue of Valley's past breaches of the sales and service franchises, and the bankruptcy court has yet to decide whether it will order Valley to cure those defaults under section 365. Therefore, we will dismiss Chrysler's appeal.

III. Mootness

GMAC argues that Krebs's appeal is moot under 11 U.S.C. S 363(m) because Krebs is attacking the validity of the Jeep-Eagle franchise sale without first procuring a stay. We agree and will dismiss Krebs's appeal as well.

A.

Before we begin our analysis of section 363(m) and its application here, we must examine whether section 363(m) applies to the sale of the franchises. Krebs argues that the franchises were assumed and assigned under section 365, which exclusively governs the rejection, assumption, and assignment of executory contracts. We disagree.

Section 363(b) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." (emphasis added.) Section 365(f)(1) provides that "the trustee may assign . . . [executory] contract[s] or [unexpired] lease[s] under paragraph (2) of this subsection." Section 363 includes a statutory mootness provision, while section 365 does not. The issue is whether section 365 is the exclusive provision governing the sale of the franchises or whether the mootness provision in section 363 also covers this situation. In other words, our inquiry is whether assignments of the franchises under section 365 are also sales of estate property subject to section 363(m). We conclude that they are.

12

In describing the scope of the bankruptcy estate, section 541 casts a wide net:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. S 541(a)(1) (emphasis added). To determine if the franchises are property under section 541, we look to state law. See Butner v. United States, 440 U.S. 48, 54, 99 S. Ct. 914, 917 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."); accord In re Modular Structures, Inc., 27 F.3d 72, 77 (3d Cir. 1994) (collecting cases). Here, the franchises allowed Valley to sell vehicles in Pennsylvania. The Pennsylvania Board of Vehicles Act, Pa. Stat. Ann. tit. 63, S 818.1 et seq. defines a franchise as:

> "The written agreement between any new vehicle manufacturer or distributor and any new vehicle dealer or between any new vehicle manufacturer and distributor which purports to fix the legal rights and liabilities of the parties to such agreement, and pursuant to which the dealer or distributor purchases and resells the franchise product or leases or rents the dealership or distributorship premises."

Pa. Stat. Ann. tit. 63, S 818.2. Before the enactment of this definition, the Pennsylvania Supreme Court had opined that:

> "[i]n its simplest terms, a franchise is a license from the owner of a trademark or trade name permitting another to sell a product or service under the name or mark. More broadly stated, the franchise has evolved into an elaborate agreement by which the franchisee undertakes to conduct a business or sell a product or service in accordance with methods and procedures prescribed by the franchisor, and the franchisor

13

undertakes to assist the franchisee through advertising, promotion and other advisory services."

Atlantic Richfield Co. v. Razumic, 390 A.2d 736, 740 (Pa. 1978) (quoting Piercing Pagoda, Inc. v. Hoffner, 351 A.2d 207, 211 (Pa. 1976)). Furthermore, the "cornerstone of a franchise system must be the trademark or trade name of a product. It is this uniformity of product and control of its quality and distribution which causes the public to turn to franchise stores for the product." Atlantic Richfield, 390 A.2d at 740 (quoting Susser v. Carvel Corp., 206 F. Supp. 636, 640 (S.D.N.Y. 1962), aff'd, 332 F.2d 505 (2d Cir. 1964)). Under Pennsylvania law, "[t]he ownership of a trade-mark has, in general, been considered as a right of property." Appeal of Laughman, 18 A. 415, 416 ( Pa. 1889).

Trademarks are property, and franchises are licenses to use such property. Thus, under Pennsylvania law, these franchises are interests in property, and as such are property of the estate under section 541. Cf.5 Collier on Bankruptcy P 541.06[5] (Lawrence P. King et al. eds., 15th ed. rev. 1997) ("The debtor's estate includes any interest under an executory contract to purchase goods either from or by the debtor."). They are also covered by section 363, although the procedure for their transfer is delineated by section 365. Therefore, section 363(m) governs the sale of the franchises here, notwithstanding that section 365 applies to the particular mechanics of conveyance.

A case cited by Krebs for the opposite result actually supports our conclusion. Recognizing the operation of both section 363 and 365 in the transfer of executory contracts, the Court of Appeals for the Ninth Circuit stated that before a sale of an executory contract may be concluded under section 363, it must be assumed under section 365. See In re Qintex Entertainment, Inc., 950 F.2d 1492, 1495 (9th Cir. 1991). This was necessary because under Ninth Circuit precedent, unassumed executory contracts are not part of the bankruptcy estate. Id. Thus, Qintex supports our conclusion that section 363 governs the "sales" of contracts here. Section 365 provides some limitations and conditions to assignments; none of which negates the applicability of section 363 to the sale, at auction, of the franchises.

14

Nor is our decision in In re Joshua Slocum Ltd., 922 F.2d 1081 (3d Cir. 1990), to the contrary. In Slocum, the debtor, a lessee of retail space in a shopping center, requested and received authorization from the bankruptcy court to assume and assign its lease to a third party. The bankruptcy court approved the assignment but amended the assigned lease to delete an average sales requirement clause. The district court affirmed without opinion, and thus denied the lessor's motion to dismiss for mootness. On appeal, the appellee again moved to dismiss the appeal as moot, citing section 363(m).

Although we found that the appeal was not moot, Slocum does not control our decision here. There, the Trustee requested and received "authorization to assume and assign the Lease pursuant to 11 U.S.C. S 365." Id. at 1084. However, the Trustee never attempted to sell the the Lease under section 363, and the parties conceded that section 363(m) did not apply in cases where the Trustee merely assigns a lease under section 365. Id. at 1085. Unlike Slocum, the bankruptcy judge in this case authorized both an assumption under section 365 and a subsequent sale under section 363. The bankruptcy court also conducted an auction for purposes of selling the franchises under the rules implementing section 363, which state that "all sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1). There is no parallel provision under section 365 or its companion, Fed. R. Bankr. P. 6006. For all these reasons, Slocum does not foreclose our conclusion that the sale of the franchises is covered by section 363(m).

B.

Section 363 allows the sale or lease of property of the estate, not in the ordinary course of business, but imposes a limit on appellate review:

> "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith,

15

whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

11 U.S.C. S 363(m). We earlier identified two possible constructions of this subsection, without adopting either. See Pittsburgh Food & Beverage, Inc. v. Ranallo, 112 F.3d 645, 648-49 (3d Cir. 1997). One construction, followed by a majority of courts of appeals, is a per se rule, mooting appeals absent a stay of the sale or lease at issue. See id. at 649-51 (citing cases of the 1st, 2d, 5th, 7th, 11th, and D.C. Circuits); see also In re Onouli-Kona Land Co., 846 F.2d 1170, 1173 (9th Cir. 1988) (following per se rule with one exception: appeals not moot where property is sold to a creditor who is a party to the appeal and the sale is subject to a statutory right of redemption).

A second formulation comes from how we construed a parallel provision in the Code, section 364(e), which governs the validity of debts or liens granted to a good faith creditor:

"The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal."

11 U.S.C. S 364(e). See In re Swedeland Dev. Group, Inc., 16 F.3d 552 (3d Cir. 1994) (en banc) (discussed in Pittsburgh Food, 112 F.3d at 648).

In construing section 364(e), we refused to adopt a per se rule:

"[T]here is no escape from the logic that inasmuch as section 364(e) provides for the consequences of the reversal or modification of an order under 364(d) when the order has not been stayed pending appeal, it is impossible to conclude that section 364(e) in itself

16

> requires that an appeal be dismissed if a stay is not obtained. After all, neither Swedeland nor anyone else can explain how there can be a "reversal or modification" of an order, if the appeal from the order has been dismissed.
>
> Yet this exercise in logic is not dispositive of the mootness issue for even though section 364(e) standing alone does not require dismissal of an appeal when a stay is not granted, it might establish circumstances which under law other than section 364(e) require dismissal of the appeal. Thus in our consideration of the mootness argument we cannot limit our inquiry to an examination of section 364(e)."

Id. at 559 (emphasis added). In Swedeland, we held that an appeal from a section 364(d) order regarding a loan in which a portion of the funds had not been disbursed was not moot under general mootness principles because it was possible to fashion some meaningful, if only partial, relief. Id. at 560–61. Regarding a fully disbursed loan, however, the appeal was moot because the district court could not fashion any effective relief that would not violate section 364(e). Id. at 562–63.

We reject the per se rule. Viewing section 363(m) through the prism of Swedeland's construction of section 364(e), section 363(m) would not moot every appeal not accompanied by a stay. It does, however, restrict the results of a reversal or modification of a bankruptcy court's order authorizing a sale or lease, if reversal or modification would affect the validity of the sale or lease. That is precisely the situation here. Accordingly, there are two prerequisites for section 363(m) "statutory" mootness: (1) the underlying sale or lease was not stayed pending the appeal, and (2) the court, if reversing or modifying the authorization to sell or lease, would be affecting the validity of such a sale or lease.

C.

Since the first prerequisite is present, we must see whether a remedy can be fashioned that will not affect the validity of the sale. In doing so, we must look to the remedies requested by the appellants. See Pittsburgh Food

17

& Beverage, 112 F.3d at 649–50. Krebs argues that the rejection of the buy–sell agreement was improper because that contract was not executory, and alternatively, if it was, it did not satisfy the business judgment test. Krebs wants us to reverse the bankruptcy court's order allowing Valley to reject the buy–sell agreement. Naturally, this would have an impact on the validity of the auction sale of the Jeep–Eagle franchise, because reversing the rejection would necessarily require reversing the subsequent assumption and assignment of the underlying franchises. Clearly, this remedy is not permitted by section 363(m).

Krebs also argues that at the very least, it should get some form of recoupment, credit or refund for the amount it paid under the first installment of the buy–sell agreement. Under Pittsburgh Food, however, a refund would be an attack on the sale price, impermissibly affecting the validity of the sale. See Pittsburgh Food, 112 F.2d at 649, 650; see also In re The Charter Co., 829 F.2d 1054, 1056 (11th Cir. 1987) ("[A] refund of a portion of the purchase price. . . . a central element of a purchase . . . challeng[es] the validity of the sale itself.").

Krebs argues that the relief it requests will not affect any third parties, and were we to order a refund, it would only come from GMAC, a creditor, not from innocent third parties who may have already spent the proceeds. Section 363(m), however, contains no exception for sales to creditors, or other parties to the bankruptcy proceedings, or to deep–pocketed financing companies like GMAC. Moreover, as we and other courts have recognized, section 363(m) was created to promote the policy of thefinality of bankruptcy court orders, and to prevent harmful effects on the bidding process resulting from the bidders' knowledge that the highest bid may not end up being the final sale price. Pittsburgh Food, 112 F.3d at 647–48.

We also reject Krebs's request for recoupment. Under that doctrine, a debtor's demand must arise from the same, integrated transaction as the claim against it. See In re Flagstaff Realty Assocs., 60 F.3d 1031, 1035 (3d Cir. 1995). Here, Valley's demand for the auction price derives from the auction sale, while Krebs's claim arises from the buy–sell agreement. The auction sale and the buy–sell agreement are

18

not a single integrated transaction. Rather, they are separate transactions that merely seek to accomplish the same result: the transfer of the franchises to Krebs.

Everything Krebs seeks affects the validity of the sale. Thus, under section 363(m), Krebs's appeal is moot because it did not receive a stay of the sale pending appeal, the sale has since been closed, and the relief it seeks would impact the validity of that sale.

IV. Conclusion

We hereby dismiss Chrysler's appeal from the district court because it did not properly appeal from the bankruptcy court and does not have standing as a person aggrieved by the bankruptcy court's decision. We also dismiss Krebs's appeal as moot for failure to stay the franchise sale. This cause is remanded to the district court so that it may dismiss Krebs's appeal from the bankruptcy court's order.

A True Copy:
Teste:

     Clerk of the United States Court of Appeals
     for the Third Circuit

19