Janet Lynn TIMMERMAN, Plaintiff,

v.

The UNIVERSITY OF TOLEDO et al., Defendants.

Civ. No. C 76–463.

United States District Court,
N. D. Ohio, W. D.

Oct. 14, 1976.

Frank A. Justen, Toledo, Ohio, for plaintiff.

Spengler, Nathanson, Heyman, McCarthy & Durfee, James R. Jefferies and Kenneth White, Toledo, Ohio, for defendants.

## MEMORANDUM AND ORDER OVERRULING MOTION FOR PRELIMINARY INJUNCTION

DON J. YOUNG, District Judge.

This is an action by a person whose application was denied for admission as a beginning student in the College of Law of the University of Toledo, hereinafter referred to as the defendant, in the class entering in September of 1976. The defendant only accepts beginning students in its College of Law in the fall of each year. The named parties defendant, in addition to the University itself, are several administrative officers of the defendant and its College of Law.

Plaintiff sought both a temporary restraining order and a preliminary injunction requiring her admission as a student. The temporary restraining order was denied, and shortly thereafter a hearing was held upon the motion for a preliminary injunction. This memorandum will serve as the Court's findings of fact and conclusions of law resulting from the hearing.

From the evidence it appeared that plaintiff had completed her undergraduate work as an English Major in the College of Education of the defendant and graduated at the end of the summer quarter. She had done some work at a graduate level, and held a graduate assistantship in the Department of English of defendant's College of Arts and Sciences. At the time of the hearing she held a graduate assistantship in the defendant's College of Business Administration. During her undergraduate work she had been active in student affairs, held outside employment, and accumulated a grade point average of 3.25.

She had applied to the defendant's College of Law, and to no other law school, in furtherance of her desire to enter the study and practice of law.

As one of the standard requirements of law schools everywhere, plaintiff took the Law School Admission Test, hereinafter referred to as the LSAT. She took the test twice, attaining scores of 433 and 457, respectively, as against a possible score of 800. Peculiarly, on the separate writing ability section of the LSAT, plaintiff's scores were 39 and 49 against a maximum of 80, although she was an English major and taught composition. It is the practice of the defendant to average the scores when a candidate for admission to the College of Law has taken the LSAT more than once. Plaintiff's average scores placed her between the seventeenth and twentieth percentiles on the LSAT, and in the thirtieth percentile on the writing ability portion. The average LSAT score of the students in defendant's College of Law is above 573 in the day division, and perhaps ten to fifteen percent below that in the evening division.

Plaintiff's basic contention is that although her application for admission to defendant's College of Law was rejected, other candidates for admission who had either LSAT scores or grade point averages, or both, lower than hers, were accepted. Because some in this group were of racial or ethnic minorities, the plaintiff contends that the rejection of her application for admission was the result of racial discrimination.

The defendant does not deny that some of the accepted candidates had lower LSAT or grade point averages than plaintiff, but offered undisputed evidence which showed that these two criteria were only two among a number of factors which were used by its Admissions Committee in determining which of a very large number of applicants should be accepted. The evidence also showed that the LSAT, and particularly the grade point average, were affected by such matters as early cultural deprivation, a recent trend toward "grade inflation," and other elements which required that the weight to be given these two elements could not be their face value alone.

While the defendant did not deny that minority status was one of the factors considered in selecting candidates for admission, the evidence showed beyond any doubt whatever that all candidates for admission, regardless of race, religion, national origin, or sex, were measured by the same standards.

In this matter at its present stage, the Court is being asked to grant, at the outset of this case, what is essentially the relief to which plaintiff would be entitled if she were to prevail upon the merits of the case. Such extraordinary relief is not to be granted unless it is clear that the plaintiff is reasonably likely to succeed upon the merits, and that the injury to the plaintiff if relief is denied greatly outweighs the harm to the defendant if it is granted.

As to the first of these elements, the plaintiff's right to a judgment in her favor upon the merits is by no means clear. The Supreme Court in *DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974), declined, upon the ground mootness, to pass on the problem here presented. It should be noted, however, that in that case the defendant University admittedly had two separate sets of admissions criteria, one for white applicants, and one for racial minority students, a clear case of racial discrimination. However, the language of Mr.

Justice Douglas in his dissent seems to be a clear and powerful statement of the applicable law.

> The key to the problem is consideration of such applications *in a racially neutral way.* . . . A law school is not bound by any legal principle to admit students by mechanical criteria which are insensitive to the potential of such an applicant which may be realized in a more hospitable environment. [Original Emphasis]

■ Plaintiff's position seems to be that due process in the selection of law students requires the use of inflexible mechanical methods, without permitting any exercise of judgment, reasonable or otherwise. However, the courts have no power to fix college admission requirements since those deal with purely academic standards. It is well established that

> Governing officials of a school required to examine students and determine whether they have performed the conditions entitling them to a diploma or other evidence of a completion of the course of study, exercise quasi judicial functions. In such capacity their decisions are conclusive, providing that their action has been in good faith and not arbitrary. 6 A.L.R. 1533 and cases cited therein. *Gaspar v. Bruton,* 513 F.2d 843, 850 (10th Cir. 1975).

To the same effect is *Mahavongsanan v. Hall,* 529 F.2d 448 (5th Cir. 1976), which holds at pages 449 and 450 that colleges and universities are not subject to the supervision or review of the courts in the uniform application of their academic standards. There is no reason to distinguish in this regard between requirements for entrance to or completion of a course of study.

■ It clearly appears from the record that plaintiff was one of a number of marginal applicants for admission to defendant's College of Law. No court has any power to require that defendant, in making its selection among such students, must rest its judgment solely on one or two factors, such as the LSAT or the grade point average, rather than upon the totality of all the facts involved in complex relationships with each other.

It thus does not appear that the plaintiff has demonstrated any legal probability of success upon the merits of her claim. In spite of that, the Court must also weigh the equities, and balance the conveniences, of the parties to any action for injunctive relief.

Although plaintiff asserts that she will suffer irreparable harm if she cannot commence the study of law immediately at the University of Toledo, no evidence was offered at the hearing to support this contention. It seems to be taken for granted that rejection by a professional school for admission to a particular beginning class inflicts irreparable harm, although a moment's reflection would show the absurdity of such a conclusion. The evidence showed that each year, the defendant receives some five or six thousand inquiries about admission to its College of Law. The number of actual applications must therefore be substantial, and it is clear that the number of students who can actually be instructed is very much limited by the defendant's resources of space, faculty, and library, so that many times more applicants must be rejected than are accepted. The probabilities are thus numerically very heavy against admission, a fact which is generally so well known that most applicants for law school admission seek to reduce the odds against them by applying to more than one college. Losing against heavy odds can hardly be considered as an irreparable injury by any standard. Setting aside local pride, one must concede that the defendant's College of Law is not so uniquely superior to all other such institutions that an applicant rejected there but accepted elsewhere will automatically suffer the harm of an inferior education.

Nor is there any fixed time limit, beyond which no one can embark on the study of law. The defendant has enrolled, and probably has presently enrolled, students twice the age of the plaintiff, for this is customary in the profession. If there is no time limit, by what standard can a delay of a year, or even several years, be considered as irreparably harmful?

The most that the plaintiff can demonstrate is a loss of one year in embarking on her professional study. On the other hand, the entire structure of defendant's academic program depends upon not overloading its facilities. Not only the defendant, but its individual students as well, are harmed if it is forced to dilute its teaching by an increase in numbers of students beyond capacity to educate.

The Court has no doubt that the plaintiff has failed to establish that she will suffer more by her rejection than the defendant would suffer if it were forced to crowd her into its limited facilities.

Plaintiff has not shown herself entitled to the extraordinary relief of a preliminary injunction, and her motion must be overruled.

Therefore, for the reasons stated, good cause therefor appearing, it is

ORDERED that plaintiff's motion for a preliminary injunction be, and the same hereby is, overruled.

IT IS SO ORDERED.