**In re HAIR FX, INC., Debtor.**

**Hair FX, Inc. Plaintiff,**

**v.**

**Christy Lodzinski, et al., Defendants.**

**No. 04–3240.**

United States Bankruptcy Court, N.D. Ohio.

Aug. 3, 2004.

James M. Perlman, Toledo, OH, for debtor.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Hearing held on the Plaintiff's Motion for a Preliminary Injunction. Underlying this Motion is the Plaintiff's Complaint for Money Damages, Declaratory and Injunctive Relief. After having had the opportunity to consider the arguments presented by the Parties, as well as review the evidence presented in this case, the Court, for the reasons set forth below, finds that the Plaintiff's Motion should be Denied.

The Plaintiff, Hair FX, Inc., is in the hair restoration business. Robert Galuzny is the sole shareholder of the Corporation. Presently, the Plaintiff operates its business under the protections of this Court, having filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on May 31, 2004. On July 14, 2004, the Plaintiff filed its Motion for a Preliminary Injunction against the five Defendants in this action: Christy Lodzinski; Angie Parton; Beth Bland; Daryle Parr; and Empact International Inc.

Prior to filing for bankruptcy protection, all the Defendants in this action performed hair restoration and/or related services for customers of the Plaintiff, Hair FX. At various times, Mr. Galuzny, as a precondition for their continued business relationship with Hair FX, required all of the Defendants to execute non-compete agreements. By way of the instant complaint, Hair FX now seeks enforcement of these agreements, and damages for averred breaches thereof. Only three of these agreements, however, were presented as evidence to the Court, the others having been "lost." The agreements in evidence are that of Christy Lodzinski; Beth Bland; and Daryle Parr. (Exs.A, C, F).

In signing the non-compete agreements with Hair FX, the status of the first three Defendants, Christy Lodzinski, Angie Parton and Beth Bland, was that of an employee; Mr. Parr's relationship with Hair

FX was almost always that of an independent contractor. However, for a short interval of time, Mr. Parr was treated as an employee for tax and health insurance purposes. As it concerns his status as an independent contractor, the evidence presented in this case shows that Mr. Parr has extensive experience and expertise in the hair restoration business, having worked in the field well prior to his involvement with Hair FX. At the present time, only Mr. Parr and to a lesser extent Ms. Parton are still engaged in the hair restoration business, with both treating some former customers of Hair FX.

## DISCUSSION

■ In accordance with the terms of the non-compete agreements, Hair FX now seeks an injunction "against defendants prohibiting them from providing services and products in direct or indirect competition with Hair FX, and restraining them from using or disclosing the confidential business information and trade secrets of the plaintiff." (Doc. No., at pg. 3).

The entering of a preliminary injunction is governed by Rule 65 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7065. Under Rule 65, the Sixth Circuit Court of Appeals has set forth four nonexclusive factors a court should balance when deciding whether to issue a preliminary injunction: (1) whether the plaintiff has a strong likelihood of succeeding on the merits; (2) whether the plaintiff will suffer irreparable injury absent the injunction; (3) whether issuing the injunction will cause substantial harm to others; and (4) whether the public interest will be furthered by the issuance of the injunction. *Gonzales v. National Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir.2000). Although none of these factors is an absolute prerequisite, a finding that there is no

likelihood of success on the merits is usually fatal to the action, and thus will form the staring point of this discussion. *Id.*; *Mascio v. Public Employees Ret. Sys. of Ohio*, 160 F.3d 310 (6th Cir.1998); *Teamsters Local Union 299 v. U.S. Truck Co. Holdings*, 87 F.Supp.2d 726, 733 (E.D.Mich.2000).

■ There is no set standard for determining whether a moving party has a strong likelihood of success on the merits of the case. Instead, case law generally shows that this threshold requirement is to be viewed as a sliding scale in relationship to the strength and weakness of the other three factors enumerated above. *Florida Med. Ass'n v. U.S. Dep't of Health, Educ. & Welfare*, 601 F.2d 199 (5th Cir.1979). At a minimum, however, a review of decisions addressing the issue show that, no matter the strength of the other considerations, the plaintiff must put forth at least a prima facie showing of their underlying cause of action to justify the entering of a preliminary injunction. *See, e.g., Timmerman v. University of Toledo*, 421 F.Supp. 464, 466 (N.D.Ohio 1976).

In seeking to obtain a preliminary injunction against the Defendants, Hair FX relies on two legal arguments which will be addressed in order. First, Hair FX cites to the Ohio Uniform Trade Secrets Act, O.R.C. § 1333.61, et seq. Second, Hair FX argues that, as an equitable remedy, Ohio law allows the entering of an injunction against a party who has breached the terms of a Covenant not to Compete. (Doc. No. 2, at pg. 3).

Ohio law generally protects, and allows a court to enjoin actions that would compromise information that is deemed to be a "trade secret." O.R.C. § 1333.62. For this purpose, Ohio law defines a "trade secret," in relevant part, as, "any business information or plans, financial information, or listing of names, addresses, or telephone

numbers ..." O.R.C. § 1333.61(D). Here, any customer information, including a customer list, held by Hair FX meets this definition. *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency,* 88 Ohio St.3d 166, 173, 724 N.E.2d 411, 418 (2000) (customer lists, among other things, are protected by Ohio's Trade Secret Act). All the same, the entering of injunctive relief is not appropriate merely because, as occurred here, business is conducted with a person or entity that is included in another business's customer list. To hold otherwise would go completely contrary to the American system of free enterprise and competition. In line therewith, Ohio's law on trade secrets is circumscribed in a number of ways so as to ensure that fair competition is not stifled.

As an initial matter, this is accomplished through paragraphs (1) and (2) of O.R.C. § 1333.61 which qualify the general definition of a "trade secret" in two respects. First, a "trade secret" must "derive[ ] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use[.]" And, the information must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." O.R.C. § 1333.61(D)(1) These limitations simply ensure the obvious: that the information is truly a secret. Thus, as pointed out by the Ohio Supreme Court in *Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency,* "a customer list" only becomes a "trade secret when the owner of the list takes measures to prevent its disclosure in the ordinary course of business to persons other than those selected by the owner." 88 Ohio St.3d at 173, 724 N.E.2d at 418.

In this case, the Court does not question that Mr. Galuzny would desire, and presumably took appropriate steps to ensure that the customer names of Hair FX were kept secret. Furthermore, both Mr. Parr and Ms. Parton admittedly have and continue to service former customers of Hair FX. However, in applying O.R.C. § 1333.61, the Ohio Supreme Court has held that "where the identity of the customers is readily ascertainable through ordinary business channels ... the courts refuse to accord to the list the protection of a trade secret." *Id.* Analogous here, the Defendants, Mr. Parr and Ms. Parton, as persons charged with servicing customers of Hair FX, knew such customers on a personal basis. As such, it is questionable whether their post Hair FX contacts with the former customers of Hair FX can be considered improper or otherwise obtained outside the scope of ordinary business channels; in this regard, no evidence was presented that any of the Defendants disclosed customer information to third parties. The relationship of Mr. Parr and Ms. Parton to the former customers of Hair FX must also be viewed through the lens of a further limitation on Ohio's Trade Secret Act.

Ohio Revised Code § 1333.62(A) provides that, when the validity of a trade secret is at issue, grounds for injunctive relief will only arise if there exists an "actual or threatened misappropriation." For this purpose, Ohio law defines, in relevant part, a "misappropriation" as the "[d]isclosure ‘or use of a trade secret of another without the express or implied consent of the other person by a person who ... [u]sed improper means to acquire knowledge of the trade secret[.]" O.R.C. § 1333.61(B)(2)(a). In turn, "improper means" is defined so as to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain

secrecy, or espionage through electronic or other means." O.R.C. § 1333.61(A).

As applied here, it was established that, while certain persons had access to the customer list and other private information of Hair FX, this group did not include any of the Defendants. By itself, of course, this does not rule out the possibility of a misappropriation; one or all of the Defendants could have gained access to Hair FX's customer list and other private information by way of subterfuge, with the existence of such a scenario being strongly intimated by Mr. Galuzny. Nevertheless, no actual probative evidence was offered in support of this position. To the contrary, the Court is faced with these circumstances to the contrary.

■ First, no customer list was actually presented into evidence, thus depriving this Court of any true yardstick by which to measure the extent of the alleged transgressions. Second, the testimony of those former customers of Hair FX who were called as witnesses show that neither Mr. Parr or Ms. Parton actively solicited customers of Hair FX. Instead, such customers simply followed Mr. Parr and Ms. Parton to their new places of business, a fact which even the witnesses called by Hair FX made no attempt to conceal. Standing alone, this will not constitute an act of misappropriation as applied to O.R.C. § 1333.61(B)(2)(a); Ohio's Trade Secret Act does not prevent, as is common in many service related fields, a customer from maintaining their loyalty with the individual providing the service as opposed to the actual business providing the service.

In sum then, when all things are viewed together, the Court is unable to discern any meaningful correlation between Mr. Parr and Ms. Parton providing their services to former customers of Hair FX and the misappropriation of confidential infor-

mation from Hair FX. The Court therefore cannot, with the evidence advanced at the Hearing, find that the Plaintiff's chances of success on the merits of its claim for the misappropriation of a trade secrets is likely to be successful. As a consequence, the issuance of an injunction against Mr. Parr and Ms. Parton, as well as the other Defendants who do not now actively participate in the hair business, is premature at this point. Similarly, as it has not been shown that any of the Defendants have or are likely going to disclose to third parties information relating to the customers of Hair FX, whether current or former, the issue of an injunction on this matter is also not ripe for a decision at this point in time.

■ As its second basis for relief, the Plaintiff, Hair FX, seeks specific performance of non-competition agreements signed by the individual Defendants. Related thereto, Hair FX asks "this Court for a declaration that the Restrictive Covenant Agreement is valid and binding upon the Defendants." (Doc. No., at pg. 5).

■ Although a restraint on trade, Ohio law recognizes and will enforce, in appropriate circumstances, an agreement not to compete. *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 71 O.O.2d 12, 325 N.E.2d 544 (1975). As such agreements are, at their heart, simply contracts, their validity is governed by normal contractual principals—e.g., the need for an offer, acceptance and consideration. *Rogers v. Runfola & Assoc., Inc.*, 57 Ohio St.3d 5, 6–7, 565 N.E.2d 540, 541–542 (1991). However, unlike most other contracts, a covenant not to compete, being a restraint on trade and often the result of an uneven bargaining arrangement between employer-employee, is subject to certain limitations: (1) the restrictions imposed by the agreement must be no greater than necessary to protect the employer's legitimate business in-

terests; (2) the restrictions will not impose an undue hardship on the former employee; and (3) the restrictions will not cause injury to the public. To the extent, however, these conditions are only partially satisfied, "courts are empowered to fashion a reasonable covenant between the parties...." 57 Ohio St.3d at 8, 565 N.E.2d at 543.

 If valid, a party may seek, by way of an injunction, specific performance of a covenant not to compete, as well as damages for breach of the covenant. *Busch v. Premier Integrated Med. Assocs., Ltd.,* 2nd Dist. No. 19364, 2003–Ohio–4709, 2003 WL 22060392. When a party, such as Hair FX, seeks injunctive relief of a covenant not to compete, Ohio law holds as follows:

> The decision as to whether an injunction should be granted depends on the specific facts and circumstances of a given case. The trial court retains broad discretion when framing the terms of an injunctive order. In order for an injunction to issue, it must be shown that such relief is necessary to protect a clear right from irreparable injury, where the remedy at law is inadequate. The right to an injunction must be clear and the proof thereof clear and convincing. The facts which will warrant mandatory relief must be clear, be free from reasonable doubt, and disclose the prospect of irreparable injury to the complainant. Equity will not interfere where the anticipated injury is doubtful or speculative; reasonable probability of irreparable injury must be shown. Such relief will be refused where the injury is so slight as to bring the case within the maxim *de minimis non curat lex,* where there is no appreciable damage, where a

mandatory decree would require a difficult and expensive act, or where its enforcement would necessitate close and continuous supervision by the court for an indefinite period. As in other cases of injunction, the court will balance the equities between the parties and consider the benefit to the plaintiff of a mandatory writ as against the inconvenience and damage to the defendant, and award relief accordingly. Irreparable harm exists when there is a substantial threat of a material injury which cannot be adequately compensated through monetary damages.

*Restivo v. Fifth Third Bank,* 113 Ohio App.3d 516, 521, 681 N.E.2d 484 (1996) (internal citations and quotations omitted). Upon application of this holding, it is hard to see how any irreparable harm will befall Hair FX if an injunction is not issued.

 The facts show that neither Ms. Lodzinski nor Ms. Bland are presently in the hair business. In addition, Ms. Parton's involvement in the hair restoration business is minimal. As for Mr. Parr, while his involvement in the hair restoration business is extensive, it does not appear that his involvement with those customers that were exclusive to Hair FX was significant in scope. In this regard, certain facts cannot be overlooked. Mr. Parr began his involvement in the business well prior to the time he became associated with Hair FX; Mr. Parr, through his expertise and contacts, helped to bring customers to Hair FX, with whom he has a personal rapport; Mr. Parr operated, for the most part, as independent contractor at Hair FX;[1] and Mr. Parr, like Mr. Galunzy, has operated his own hair restoration business. Based, therefore, upon the limited scope of any potential violation, the

---

1. Contrary to Mr. Parr's assertion, however, a covenant not to compete, in certain circumstances, may be enforceable against an independent contractor. *Quaker City Engine Rebuilders, Inc. v. Toscano,* 369 Pa.Super. 573, 535 A.2d 1083 (1987).

more appropriate remedy for the Plaintiff is damages, as opposed to the blanket injunction it seeks. Also, the Court questions whether Mr. Parr's covenant not to compete, based in part on the concerns just stated and for the reasons stated below, is even valid, and if not, whether it may even be amended.

In this case, the covenant not to compete between Hair FX and Mr. Parr proscribes him from engaging directly or indirectly in the hair restoration business for a period of two years. (Plaintiff's Ex. C). When determining the validity of such a restriction, the Supreme Court of Ohio has set forth a litany of considerations a court may consider:

> the absence or presence of limitations as to time and space;
>
> whether the employee represents the sole contact with the customer;
>
> whether the employee is possessed with confidential information or trade secrets;
>
> whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition;
>
> whether the covenant seeks to stifle the inherent skill and experience of the employee;
>
> whether the benefit to the employer is disproportional to the detriment to the employee;
>
> whether the covenant operates as a bar to the employee's sole means of support;
>
> whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and
>
> whether the forbidden employment is merely incidental to the main employment.

*Rogers v. Runfola & Assoc., Inc.,* 57 Ohio St.3d at 8, 565 N.E.2d at 544.

Of these considerations, a number of serious questions arise as the entire validity of the Parties' agreement. The Parties' agreement seeks to eliminate ordinary competition from Mr. Parr by stifling his inherent skills and experience in the hair restoration field. For a period of two years, it would bar Mr. Parr from his sole means of support, while not providing a commensurate benefit upon the Plaintiff. And finally, Mr. Parr developed his skills before he began his relationship with Hair FX. Consequently, given the questionable validity of Mr. Parr's agreement not to compete, the pursuit of damages is again, as opposed to injunctive relief, the more appropriate remedy at this time.

To put everything together, the Court seriously questions the extent to which the agreements not to compete at issue in this case are valid or can, even through court intervention, be made valid. However, even to the extent that the covenants not to compete are valid, the existence of any irreparable harm, in the absence of enforcement, has not been shown while at the same time the Plaintiff has an adequate remedy available at law to address any past or future breach of the covenants. Thus, the issuance of an injunction is, at this particular point in time, improper. Similarly, as no misappropriation of any trade secret has been shown, the issuance of an injunction on this count is also inappropriate.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that the Motion of the Plaintiff, Hair FX, for a preliminary injunction, be, and is hereby, DENIED.